## Caleb S. Keech vs. The Baltimore & Washington Rail Road Company.

Statutes are to be construed in reference to the principles of the common law, for it is not to be presumed that the Legislature intended to make any innovation further than the case absolutely requires; the law rather infers that the Act did not intend to make any alteration, *other* than what is specified, and *besides* what has been plainly pronounced.

The well settled principle of the common law, that a plaintiff is not entitled to recover for injuries to which his own fault or negligence has directly contributed, is not abrogated by the several Acts of Assembly, regulating the liability of railroad companies in this State, for stock killed or injured by their trains.

These Acts leave the question of negligence *on the part of the plaintiff* where it was at the common law, and do not confer upon a party, who is himself a wrong doer, the right to obtain redress for the consequences of his own negligence or misconduct.

By the common law, in order to maintain an action against a railroad company for injury to stock, it was incumbent on the plaintiff to prove that the damage resulted from the fault or negligence of the *defendant or its agents;* this has been *changed* by the Acts of Assembly, which cast the *onus* of proof on the *defendant.*

When stock is killed by a railroad train, the law imputes negligence to the agents of the company, and in order to exempt itself from liability it must be shown, that the damage complained of was the result of unavoidable accident.

By this law the Legislature did not intend to interfere with the *time-tables* of the company, or to limit the rate of speed for the trains; while the Act leaves the company in the full exercise of its rights in this respect, it imposes upon them the duty of exercising the highest degree of care and caution.

In the absence of fault or negligence on the part of the plaintiff, the exemption of the company depends upon its being proved, that the collision took place without any fault or negligence on the part of its agents.

A prayer, that if the jury find that the stock was upon the road without any fault of the plaintiff or his agents, and was killed by the defendant's cars, then the plaintiff is entitled to recover its value, unless the jury are satisfied such killing was the result of unavoidable accident, is correct, there being *evidence* on which to base it.

A judgment will not be reversed on account of the rejection of a prayer, correct in itself, if the same proposition be embraced in another instruction which was granted.

The question of negligence on the part of the plaintiff, as well as on the part of the defendant, is a proper subject for the jury to pass upon.

It is error to grant an instruction where there is no evidence in the cause upon which it could be based.

Where a corporation was sued by a wrong name, but process was served on its agents, and it appeared by counsel and executed releases to witnesses sworn for the defendant, and no objection was made in the court below on account of the misnomer, the objection cannot be availed of in this court.

Appeal from the Circuit Court for Prince Georges county.

*Trespass on the case*, brought on the 9th of March 1858. by the appellant against the appellee, to recover the value of two horses and one mule, killed on the Washington Branch of the Baltimore and Ohio Rail Road.

The writ was served upon the agents of the Baltimore and Ohio Rail Road company, and *that company* appeared by counsel, filed pleas, and executed releases to witnesses sworn for the defendant.

The pleas were 1st. That the defendant did not commit the wrong alleged. 2nd. That the mule and horses were on the track of the defendant's road by the negligence and default of the plaintiff, and that such negligence and default contributed to the collision set forth in the declaration. 3rd. That the defendant used proper care and diligence, but that the plaintiff was negligent. 4th. That the said mule and horses were unlawfully on the track of the defendant, and that the defendant was conducting its business in a lawful manner. The plaintiff, by his replication, joined issue on all these pleas.

*Exception.* At the trial of the cause, the plaintiff, to maintain the issues on his part joined, offered evidence showing that the defendants, as charged in the plaintiff's declaration, killed the mule and horses in said declaration specified, by the collision of the cars on the track of said defendants, and the value of said property, and further offered evidence tending to show that the said property of the plaintiff was upon the road without the fault of the plaintiff or his agents, and also tending to show that the said property was destroyed by the defendants, through the negligence of their agents, the conductor and engineer having charge of the train which

caused the loss, and then rested his cause. The defendant then offered evidence, tending to show the use of the greatest care and diligence on the part of its agents, and asked the following instructions to the jury:

1st. That if the jury shall find from the evidence that two horses and a mule, the property of the plaintiff, were killed on the Baltimore and Washington Rail Road, and shall further find that said killing was not caused by any negligence on the part of the defendant, or any of its agents, then the plaintiff is not entitled to recover.

2nd. That if the jury shall find from the evidence that two horses and a mule, the property of the plaintiff in this case, were killed on the Baltimore and Washington Rail Road, by the collision of a locomotive, the property of said defendant, and under charge of its agents, and shall at the same time find that said horses and mule were upon the track of the said railroad, through any negligence on the part of the plaintiff, or any of his agents, to keep the said horses and mule within his close, then the plaintiff is not entitled to recover, even if the jury should find that there was negligence on the part of the defendant or some of its agents.

3rd. If the jury shall believe from the evidence that the horses and mule, the property of the said plaintiff, were killed by a locomotive belonging to the defendant, and under the control and management of its agents, and shall at the same time find that said horses and mule had strayed upon the track, through any defect in the fences or enclosure of the plaintiff, or by reason of the gate of the said plaintiff having been left open by the negligence of the said plaintiff, or some of his agents, the plaintiff is not entitled to recover.

4th, That if the jury shall believe from the evidence, that two horses and a mule, the property of the plaintiff in this case, were killed on the defendant's railroad, by the collision of a locomotive belonging to the said defendant, under the control and management of the agents of the said defendant, and shall further find that said horses and mule were, at the time of said killing, upon the track of the said railroad,

without any fault or negligence of the defendant, or any of its agents, that then the said plaintiff is not entitled to recover, even though the jury should find, that at the immediate time of said killing, the said company was guilty of actual negligence, the said plaintiff being bound to keep said horses and mule on his own premises, or within his enclosure, or in custody, at his peril.

The plaintiff then asked the following instruction:

That if the jury find from the evidence that the horses and mule mentioned in the plaintiff's declaration, were upon the line of the railroad of the defendant without any fault of the plaintiff, or his agent or agents, and were killed by the railroad cars or engine of the defendant, and that they, at the time, were the property of the plaintiff, then the plaintiff is entitled to recover whatever sum the jury may find from the evidence the said property was worth, unless they are satisfied that such killing was the result of unavoidable accident on the part of the said defendant.

The court (CRAIN, J.,) refused to grant the instructions asked for, either by the plaintiff or defendant, and gave the following instructions to the jury.

1st. That if the jury shall believe that the horses and mule, the property of the plaintiff in this cause, were killed on the Washington Branch of the Baltimore and Ohio Railroad, by the collision of a locomotive, the property of the said railroad company, and under charge of its agents, and shall at the same time find that said horses and mule, the property of the said plaintiff, were upon the track of the said railroad through any negligence on the part of the plaintiff, or his agents, to keep said horses and mule within his close, that then the plaintiff is not entitled to recover.

2nd. That if the jury shall find and believe, from the evidence in this cause, that the horses and mule, the property of said plaintiff, were killed by a locomotive belonging to the defendant, and under the control and management of its agents, and shall at the same time find that said horses and mule had strayed upon the track through any defect in the fences or enclosures of the said plaintiff, or by reason of the

gate of the said plaintiff having been left open by the negligence of the said plaintiff, or some of his agents, the plaintiff is not entitled to recover.

3rd. That if the jury shall believe, from the evidence, that the horses and mule, the property of the plaintiff in this case, were killed on the Baltimore and Ohio Railroad, by being run over by a locomotive, under the control and management of the agents of said railroad company, and shall further find that said horses and mule were upon the track of said railroad without any fault or negligence of the defendant, or any of its agents, that then said plaintiff is not entitled to recover, said plaintiff being bound to keep said horses and mule upon his premises, and within his enclosures.

4th. That if the jury shall find, from the evidence in this cause, that the horses and mule, the property of the plaintiff, were killed by the Baltimore and Ohio Railroad, and shall further find that said horses and mule were on the railroad without the fault and negligence of the plaintiff, or his agents, then the said railroad is responsible, and the plaintiff is entitled to recover the value of said property, unless they are satisfied the killing was the result of an unavoidable accident.

The plaintiff excepted to the instructions of the court as given, and to the refusal of the court to grant the instruction prayed for by him, and the verdict and judgment being in favor of the defendant, appealed.

The cause was argued before LE GRAND, C. J., TUCK, BARTOL and GOLDSBOROUGH, J.

*Daniel Clarke* and *Thos. G. Pratt,* for the appellant:

The objection, that the suit was brought against the company by the wrong name, cannot be maintained. The Baltimore & Ohio Railroad Co. was summoned, appeared, pleaded, and executed releases to make their agents, the conductor and engineer, witnesses. They could have taken advantage of the misnomer by plea, or by raising the question of variance at the trial, but as they did neither, they cannot now

take advantage of it. 8 *Gill*, 240, *Alexander vs. Walter*. A misnomer cannot be pleaded in this court.

A prayer which leaves to the jury the finding of a fact of which there is no evidence, is erroneous. 4 *Md. Rep.*, 454, *Long vs. Eakle*. The first and second instructions granted by the court, are liable to this objection. There is no evidence that the horses and mule were on the track of the road through any negligence on the part of the plaintiff, or that they had strayed on the road through any defect in fences, or leaving gates open. Again, where the court grants inconsistent instructions, it is error. The fourth instruction is utterly inconsistent with the others, and where the instructions are inconsistent, or if some are wrong and some right, or if any one be wrong, there must be a reversal.

But the first, second and third instructions are clearly wrong. They announce the propositions that if the stock was on the road through any negligence of the plaintiff, or without the fault or negligence of the defendants, then the plaintiff is not entitled to recover, though the jury may believe that the stock was on the road without any fault or negligence of the plaintiff, and that it was killed willfully and intentionally by the company, for the reason (assigned by the court) that the plaintiff was bound to keep his stock upon his own premises, and within his enclosures. Now, even at *common law*, the defendants had no right to kill stock trespassing upon their premises. They had the right to impound them, or sue for damages, but not willfully and wrongfully to kill them. 3 *Bl. Conn.*, 211. 4 *Texas*, 492, *Ford vs. Taggart*. 14 *Conn.*, 1, *Johnson vs. Patterson*. Not every default on the part of the plaintiff will justify a defendant in his acts of trespass. Where there is a mixture of negligence, so that the line of distinction cannot be drawn as to whose negligence directly contributed to the injury, the plaintiff cannot recover, but where the negligence of the defendant is *proximate*, and that of the plaintiff *remotely*, the cause of the injury, he can recover. 11 *East.*, 60, *Butterfield vs. Forrester*. 3 *Mees. & Wels.*, 244, *Bridge vs. Railway Co.* 10 *Mees. & Wels.*, 546, *Davies vs. Mann*. 4 *Bing.*, 628, *Bird vs. Holbrook*.

1 *Adol. & Ellis N. S.*, 30, *Lynch vs. Nurdin.* Applying the rules of these authorities to railroad cases, the mere fact of trespassing is not such a direct contribution to the injury as will prevent a recovery on the part of the plaintiff. 19 *Conn.*, 566, *Beers vs. Housatonuc R. R. Co.* 24 *Verm.*, 487, *Trow vs. Vermont Central R. R. Co.* 25 *Verm.*, 150, *Jackson vs. Rutland & Burlington R. R. Co.* 25 *Ala.*, 229, *Nashville & Chattanooga R. R. Co. vs. Peacock.* 3 *Ohio State Rep.*, 172, *Kerwhacker vs. Railroad Co.*

Again, the law of these instructions is wrong, under the statute laws of this State. Where injury to property occurs by fire, caused by a railroad train, the Act of 1837, ch. 309, declares that the railroad company "shall pay damages to the owner of the property equal to the injury to his property." The obligation of the company is absolute, and entirely independent of all questions of care and diligence on their part, or the want of care on the part of the owner of the property. By this statute, the common law rules upon the subject are entirely abrogated, and whilst it remained in full force, a plaintiff, upon proof of loss by fire, caused by the company, and the amount of such loss is *ex vi statuti* entitled to recover that amount.

Prior to the Act of 1838, ch. 244, for all injuries to property by railroad companies, except those caused by fire, the parties injured were left to their common law remedy. By this Act it is declared, "that the several railroad companies in this State *shall be responsible* for injuries inflicted upon any stock, as cattle, horses, &c., or by fire occasioned by their engines upon any of their roads, or the branches thereof." If the law had stopped here, the liability of these companies for all injuries to the descriptions of property embraced in the Act, would have been absolute, and the party in a suit for stock killed, upon proof of the injury, would necessarily recover the value of the stock. The only questions open would be, was the stock killed by the railroad? and secondly, what was its value? This *absolute* responsibility of the company is restricted alone by the limitation of that responsibility, declared by the succeeding clause of the Act. The clause

already adverted to, makes the company absolutely responsible; the restriction is, that this absolute responsibility shall continue, "*unless* said *company can prove* that the injury complained of, has been committed without any negligence on the *part of said company*, or *their agents.*" This statutory exemption from the responsibility imposed by the Act, is not as assumed in the instructions of the court, that the railroad company is responsible, unless the owner can prove that his stock was on the road without fault on his part, by reason of defective fences, or open gates, or his omission to keep his stock on his own premises; but it is on the contrary, that the company shall be responsible, "unless the company *can prove* that the injury has been committed without any negligence of the company, or its agents."

At common law, to enable a party to recover for the killing of stock by a railroad, *he must prove* that the stock was killed by the *negligence* of the company, or its agents. The *burden of proof* rests upon the plaintiff, and unless he can establish that the killing was the result of negligence on the part of the company, he cannot sustain his action. By the Acts of 1838, ch. 244, and 1846, ch. 346, the common law rule is repealed, and the *burden of proof* is changed. The railroad company *shall be responsible*, "unless the said company *can prove* that the injury complained of has been committed without any negligence on the part of the company, or its agents." By these provisions of the statute law, the *sole* thing which will exempt the company from liability, is: 1st, proof that the injury was committed without any negligence on the part of the said company, or its agents; or, 2nd, proof that the killing was the "result of unavoidable accident." To adopt the instructions of the court below as law, operates a total repeal of the statute. The statute establishes the *only* mode by which the company can be relieved from this responsibility. The law, as announced by the court below, fixes a new test of the liability of the railroad company, and exempts it from responsibility, "if the stock were upon the track through any negligence on the part of the plaintiff, or his agents, to keep them within his close, or if the stock were

on the railroad without the fault or negligence of the company, or its agents." If this construction be right, it amounts to a total exemption of railroad companies in this State from liability for injuries to stock. Because the stock can only be killed on the track of the railroad, and the only cases in which they could be there without the fault or negligence of the owner or his agents, upon the hypothesis of the law as announced by the court, are, 1st, where the stock are caught and held or driven upon the track, by the authority and direction of the railroad company; or, 2nd, where they stray upon the track through the negligence of some agent of the company, in leaving open a gate, or pulling down a fence, while engaged in the employment of the company. If stock are upon the track in any other manner, they are *trespassers*, according to the ruling of the court below, and it is the fault of the owner or his agent, because he is bound to keep them within his close. Now the first case is scarcely supposable, and the second would be of such rare occurrence, that to limit the responsibility of railroad companies in this manner, would amount to their total exemption from responsibility; and the Acts of Assembly passed with the express view of increasing the responsibility of railroad companies thus construed, become the means of restricting their liability, and, in fact, of destroying it for any *practical* purpose.

The cases of 19 *Pa. State Rep.*, 302; 11 *Barb.*, 112; and 14 *Barb.*, 364, and other cases holding a similar doctrine, were decided in those States where no statutes on the subject exist, and where the common law rule still obtains. They are, therefore, no authority in determining the construction to be given to the Acts of Assembly of this State. The principle and policy on which these decisions rest, are "the protection of the lives of the passengers from the most constant and imminent peril." But even this object is defeated by the construction placed upon our Acts of Assembly by the court. If railroad companies are not responsible for injuries to stock, where they stray upon the track through the negligence of the owner, or without the fault of the company, then they may be guilty of any *degree* of *negligence*, how-

ever great, endanger the lives of passengers by running over stock, and still escape all liability for their acts. And thus the lives of the passengers are ever exposed to the "most imminent peril," because no responsibility attaches to the company to enforce, on their part, the exercise of reasonable care and diligence. The true rule, looking both to the interests of landholders adjoining railroads, and the protection of the travelling community, is that prescribed by our Acts of Assembly, which compels the company, in order to avoid liability, to prove that the injury was committed "without any negligence on the part of the company or its agents," or that "the damage sustained was the result of unavoidable accident."

The case of *Lamborn*, in 12 *Md. Rep.*, 257, though seemingly in conflict with these views, will not, it is believed, upon a careful examination of the facts upon which that decision rests, as disclosed in the bills of exception, be found to be inconsistent with them.

*C. J. M. Gwinn*, for the appellee:

It matters not whether a rail road company has title by grant, purchase or condemnation, in the bed of the road which it occupies. If it be in possession of the land by sufferance even, it has that degree of title which would enable it to maintain trespass against a stranger, (*Viner's Abr. Trespass*, No. 1,) and if that stranger owns cattle and suffers them, by his negligent keeping, to stray upon the land of another, (3 *Bl. Comm.*, 211,) and that other be a railroad company, such man is a wrong-doer, and has committed an act of trespass. For every unauthorised intrusion into the land of another is a sufficient trespass to support an action for breaking the close, whether the land be actually enclosed or not, *Bac. Abr., Trespass, F.* There is no statutory obligation imposed on the Baltimore and Ohio Railroad Company to maintain fences upon the line of its track, and in such a case the rule of the common law is, "that I am bound to take care that my beasts do not trespass on the land of my neighbor, and he is only bound to take care that his cattle do not

6    v.17.

wander from his land and trespass on mine." 1 *Wms. Sand*, 321, *Pomfret vs. Ricroft*. 12 *Eng. Law & Eq. Rep.*, 524, *Ricketts vs. Railroad Co.*, and same case in 74 *Eng. C. L. Rep.*, 172. 93 *Eng. C. L. Rep.*, 519, *Roberts vs. Great Western Railway Co.* 4 *Excheq.;* 586, *Sharrod vs. Railway Co.* 71 *Eng. C. L. Rep.*, 617, *Fawcett vs. Railway Co.* 6 *Barn. & Cress.*, 329, *Boyle vs. Tamlyn.* This obligation on the proprietor of lands adjoining a railroad, to keep his cattle within his own enclosure, is also recognized in 29 *Maine*, 307, *Perkins vs. Eastern Railroad Co.* 5 *Denio* 255, *Tonawanda Railroad Co. vs. Munger;* and same case in 4 *Comstock*, 349. 11 *Barb.*, 112, *Clark vs. Syracuse & Utica Railroad.* And the same rule has been conclusively recognized in this State in the case of the *Balt. & Ohio R. R. Co. vs. Lamborn*, 12 *Md. Rep.*, 262.

With this law thus laid down, let us examine the exceptions in this case, although it will be necessary to consider also the difficulties which have arisen from the misnomer of the defendant.

The court knew, judicially, that there was no such *public* corporation as the "Baltimore and Washington Railroad Company," and that there could not, therefore, be any evidence in this cause that the cattle were on the line of the road of such a company. It knew judicially that there was such a corporation as the "Baltimore and Ohio Railroad Company," because its charter is regarded as a public law, (6 *Gill*, 296,) and knowing its charter to be such public law, *the court was bound to take notice of the existence and limits of the corporation created by such public law.* 5 *H. & J.*, 493, 499, *Whittington vs. Farmers Bank.* 2 *H. & G.*, 493, *Agnew vs. Bank of Gettysburg*. Having this judicial knowledge of the non-existence of such a corporation as was named in the declaration, and such judical knowledge of the existence and corporate limits of another company, as was sufficient to satisfy the court that *it,* in reality, was intended to be the defendant in the action, it could not grant the prayer of the plaintiff. Nor can it be urged that the court was prevented from exercising this judicial knowledge by the fact, that there was an appearance to the action and no

plea of misnomer in abatement. It is conceded that under the old rules of pleading such a plea would have been necessary, but the Act of 1856, ch. 112, sec. 110, has altered the law on this subject. For though sec. 109 of this Act authorises the court to amend the proceedings in the cause where the misnomer is pleaded, upon proof that the party summoned is the party against whom the suit was brought, yet sec. 110 leaves it discretionary with the defendant to determine whether he will or not plead the misnomer in abatement, *and enables him to take advantage of the variance at the trial.* The court possesses the same power at the trial as a party to the action, and when the court perceived that there was no evidence to show that the Baltimore and Washington Railroad Company had any thing to do with the act complained of in the declaration, but that the Baltimore and Ohio Railroad Company was, in reality, the aggressor, if any tort had been committed, it rejected the prayer of the plaintiff because of the variance between the pleading and the proof, and because, by reason of such variance, there was *no evidence* to sustain the prayer of the plaintiff. But while the court rejected this prayer, as framed, it gave the plaintiff the benefit of it in its application to the real defendant; for the fourth instruction given by the court is substantially the instruction prayed for by the plaintiff, only it is embodied in terms more favorable to the plaintiff than his own prayer.

The first and third instructions of the court embody the opinion, heretofore shown to be fully sanctioned by the law of this State, that the cattle of the plaintiff were trespassers the moment they entered upon the railroad track of the defendant. Attention is, however, again called to the particular language of the decision in 12 *Md. Rep.*, 262: "By the common law, an owner of cattle is bound to keep them in an enclosure, or in custody, at his peril, for every entry by them on another's possession is a trespass; and this is the law of Maryland, and applies as well to the intrusion of cattle and horses on the land over which a railroad company is entitled to its franchise, as to the property of a private owner." Where cattle are thus suffered to stray beyond the control or enclo-

sure of the owner, his negligence is first in date; and if the cattle are killed while trespassing on a railroad track, even if the negligence of the servants of the railroad company contribute to the disaster, there can be no recovery by the owner of such cattle. For, independently of the special rules applied to the case of cattle, there is a broad general rule, that no person can recover for injury done to his person or property, to which his own negligence has directly contributed. 1 *Eng. Railway Cases*, 611, *Bridge vs. Railway Co.* 8 *Carr & Payne*, 373, *Woolf vs Beard. Ibid.*, 473, *Hawkins. vs. Cooper.* 6 *Whart.*, 321, *Simpson vs. Hand.* 19 *Wend.*, 401, *Rathburn vs. Payne.* 21 *Wend.*, 189, *Barnes vs. Cole. Ibid.*, 619, *Hartfield vs. Roper.* 5 *Hill*, 282, *Brownell vs. Flagler.* 19 *Conn.*, 566, *Beers vs. Housatonuc Railway Co.* 14 *Barb.*, 364, *Marsh vs. N. Y. & Erie R. R. Co.* 22 *Barb.*, 586, *Terry vs. N. Y. Central R. R. Co.* 9 *Fost.*, 9, *Murch vs. Concord R. R. Co.* 19 *Penn.*, 302, *N. Y. & Erie R. R. Co. vs. Skinner.* 23 *Penn.*, 147, *Railroad Co. vs. Aspell.* 30 *Penn.*, 454, *Reeves vs. Del. & Lackawanna R. R. Co.*

The second instruction differs from the first only in this, that it indicates to the jury the *particular duty in regard to enclosures,* which the law imposes on a proprietor of land owning cattle, in order to exonerate *him* from the blame of prior and contributing negligence, if any disaster happen to his cattle.

Whatever may be said of the fourth instruction, it certainly cannot be complained of by the *appellant.* It tells the jury, in effect, that if they are satisfied the Baltimore and Ohio Railroad Company was the cause of the death of these cattle, that *their* negligence is a presumption of law, and if they are satisfied that no negligence has been proved against the plaintiff, the plaintiff was entitled to recover in *that action,* though brought *prima facie* against a different defendant, unless they are satisfied that the killing was the result of an unavoidable accident. A ruling more likely to operate against the defendant, could not well be imagined. It, in fact, gave the instruction asked for by the plaintiff, with a wider scope of ap-

plication. With such an instruction, the plaintiff had no cause to be dissatisfied. It placed his rights in a more favorable aspect before the jury than he was entitled to, and he cannot ask a reversal for any *such* error in this ruling of the court below. 11 *Md. Rep.*, 451, *Pettigrew vs. Barnum.* 2 *Md. Rep.*, 73, *Keener vs. Harrod & Brooke.* 4 *Md. Rep.*, 306, *Greenway vs. Turner.* 10 *G. & J.*, 354, *Planters Bank vs. Bank of Alexandria.* 14 *Md. Rep.*, 424, *Balt. & Ohio R. R. Co. vs. Resley.*

BARTOL, J., delivered the opinion of this court:

The several Acts of Assembly, regulating the liability of railroad companies in this State, for stock killed or injured by their trains, have been before this court on former occasions, when considerations of public policy and private right were duly weighed and determined. We see no reason for disturbing what was then deliberately settled.

In the case of *The Balt. & Ohio R. R. Co. vs. Lamborn*, 12 *Md. Rep.*, 257, we adverted to the well settled principle of the common law, that a plaintiff is not entitled to recover for injuries to which his own fault or negligence has directly contributed, and we said that this rule applies as well to suits against railroad companies as private individuals, and is not abrogated by the Acts of 1838, ch. 244, and 1846, ch. 346. To adopt the construction of these Acts, contended for by the appellant, would entitle a party to recover damages for stock killed by a railroad train, although it should be shown that the accident resulted from the grossest carelessness on his part, or that he voluntarily turned them loose upon the railroad track when a train was passing. We cannot impute such intention to the Legislature, nor can it be found in any reasonable construction of the Acts of Assembly. It is a cardinal rule of interpretation, that "Statutes are to be construed in reference to the principles of the common law, for it is not to be presumed that the Legislature intended to make any innovation upon the common law, further than the case absolutely required. The law rather infers that the Act did not intend to make any alteration, *other* than what is speci-

fied, and *besides* what has been plainly pronounced." *Dwar-ris*, 695. See, also, 1 *Kent's Com.*, 464, *m.*, (*7th Ed.*) *Hooper vs. Mayor & City Council of Baltimore*, 12 *Md. Rep.*, 475.

Guided by this rule of interpretation, we can give no other construction to these Acts of Assembly than that which we have heretofore declared. They leave the question of negligence, on the part of the plaintiff, where it was at the common law, and do not confer upon a party, who is himself a wrong-doer, the right to obtain redress for the consequences of his own negligence or misconduct. By the common law, in order to maintain an action like the present, it was incumbent on the plaintiff to prove that the damage complained of resulted from the fault or negligence of the defendant, or its agents. This has been changed by the Acts of Assembly. They cast the *onus* of proof on the defendant. When stock is killed by a railroad train, the law imputes negligence to the agents of the company, and in order to exempt itself from liability, it must be shown that the damage complained of was "the result of unavoidable accident." In construing these words of the Act, we will remark, that we do not understand the Legislature as intending to interfere with the *time-tables* of the company, or to limit the rate of speed for the trains. While the Act leaves to the company the full exercise of its rights in this respect, it imposes upon them the duty of exercising the highest degree of care and caution. These principles were announced in *Lamborn's case*, in which this court said, the question of the fault or negligence of the plaintiff, was a subject proper to be passed upon by the jury.

As some erroneous impressions appear to have grown out of the decision of that case, it may not be amiss to advert to some of its facts, which distinguish it from the case now under consideration. The record disclosed that Lamborn was the owner of land adjoining the railroad, that the horse was standing on the line of the road, near the track, and as the cars approached, he ran upon the track, and was overtaken and killed by the locomotive. No explanation was given of

the circumstance, or any evidence to show that the horse was in charge of any one, or to relieve the plaintiff from the imputation of negligence, which might be presumed from the facts of the case.

The facts contained in the bill of exceptions before us, on which the rulings of the circuit court were made, are as follows: "The plaintiff proved that his horses and mule (mentioned in the declaration) were killed by the collision of the cars on the railroad, and the value of the property, and further offered evidence tending to show that they were upon the road without the fault of the plaintiff, or his agents, and also tending to show that they were killed by the defendants, through the negligence of their agents, the conductor and engineer, having charge of the train which caused the loss. The defendants then offered evidence tending to show the use of the greatest care and diligence on the part of its agents."

Upon this evidence, we think the prayer asked by the plaintiff correctly stated the law, and ought to have been granted; but the judgment would not be reversed on account of its rejection, because the same proposition was embraced in the fourth instruction given to the jury. We find no error in the first instruction given by the circuit court. These instructions (the 1st and 4th) submitted to the jury the question of negligence on the part of the plaintiff, as well as on the part of the defendant, which was a proper subject for them to pass upon.

We think there was error in the second instruction, there being no evidence in the cause upon which it could be based. A similar prayer in *Lamborn's case* was ruled good, because there was evidence to support it.

The third instruction was also erroneous, because, as interpreted by the appellant, it directed the jury that the defendant was not responsible, if the horses and mule were on the track of the railroad without any fault or negligence of the defendant, or its agents: whereas, in the absence of fault or negligence on the part of the plaintiff, the exemption of the company depends upon its being proved that the *collision*

took place without any fault or negligence on the part of its agents. This third instruction appears to have been copied from the fourth prayer in *Lamborn's case.* But when that case was under consideration, the 4th prayer did not receive, either from the counsel who argued the cause, or from the court, the construction which has been given to it by the appellant, in his argument here. It was construed as if the words "without the fault or negligence of the defendant," were meant to apply to the killing, and not to the horse being on the track; by transposing those words, or by a change in the punctuation, they might be so construed, and then the prayer would be free from objection.

It is plain, however, that the phraseology of the third instruction in the record before us, is susceptible of the interpretation put on it by the appellant, and calculated to mislead the jury.

Our attention has been called by the appellee, in his argument, to the fact, that this suit was instituted against the Baltimore and Washington Railroad Company, and that there is no corporation in this State of the name of the defendant. The real name of the corporation intended to be sued, is the Baltimore and Ohio Railroad Company. The record shows that the service of process was on the agents of this company, that it appeared by counsel, and executed releases to witnesses sworn for the defendant, and that no objection was made in the court below on account of the misnomer of the defendant. Under these circumstances, we are of opinion that the objection cannot be availed of in this court. Although the defendant is precluded from the benefit of this objection on this appeal, yet it is manifest that a judgment recovered against the defendant named in the record, would be of no avail, and could not entitle the plaintiff to enforce payment by execution against the Baltimore & Ohio Railroad Company. This difficulty, however, could be obviated by an amendment, upon a retrial of the cause.

*Judgment reversed and procedendo ordered.*

(Decided March 1st, 1861.)