McIlvaine, J.
The principal question arising upon this rocord is now, for the first time, presented to this court, although it has been frequently considered by the inferior *590 courts of the State, in which conflicting opinions and judgments have been rendered thereon.
The 1st section of the act of March 25, 1859, (S. & C. 331,) provides: “That every railroad company, or other party having the control or management of a railroad, the whole or a part of which shall be located within this State, shall, and is hereby required, within (two) years after the passage of this act, or within two years after commencing to run cars thereon for the transportation of ¡Passengers or freight, to construct and maintain good and sufficient fences on both sides of such road, or such part thereof as shall be in running order, and located within this State, and also to make and maintain a sufficient number of suitable crossings for the accommodation of the public, and of persons living near the line of such railroad, together with the necessary cattle-guards, to prevent cattle and other animals from endangering themselves and the lives of passengers by getting upon such railroad; and such company shall be liable for all damages which may result to horses, cattle, or other do•mestic animals, by reason of the want or insufficiency of such fences, road crossings, or cattle-guards, or by any carelessness of such company, party, agent or agents thereof,” &c.
The 1st and 5th sections of the act of April 13, 1865 (S. & S. 7 and 8), provides as follows :
“ Section 1. That it shall be unlawful for any person or persons, being the owner or having the charge of any horses, mules, cattle, sheep, goats, swine or geese, to suffer the same to run at large in any public road or highway, or in any street, lane or alley, or upon any uninclosed land in the State of Ohio, * * * and any person violating the provisions of this act shall forfeit and pay for every such violation as penalty therefor, not less than one dollar, nor more than five dollars; continued violation after notice or prosecution, shall be held to be an additional offense for each and every day of such continuance.
“ Section 5. That the owner, or any person having in charge any animal described in this act, allowing the same *591 to run at large, in violation of this act, shall be liable for all- damages done by said animal upon the premises of another, without reference to the fence which may inclose said premises; provided, that nothing in this act shall beso construed as to render any owner or keeper of any of the animals mentioned in the first section of this act liable for damages arising to any railroad.”
. This record shows that the defendant below had neglected to construct and maintain good and sufficient fences, as required by the act of 1859, and that for the want of such fences the plaintiff’s cow had gotten upon the railroad where it was killed by defendant’s train, without any fault, however, of the defendant or its agents in the running thereof; and it also shows that the plaintiff was guilty of permitting his cow to run at large upon the uninclosed lands of the defendant, in violation of the act of 1865, whereby it went upon the track of the defendant’s railroad and was accidentally killed by the passing train.
Under such a state of facts, was the plaintiff entitled to recover ? Or, in other words, did he so contribute to the injury, by his own wrong, as to forfeit his right to compention from the defendant ?
As a general rule, it stands upon the clearest principle, as well as authority, that courts of justice will not enforce contribution among wrong-doers; nor will they apportion damages between the parties, where one, by his own wrong, has contributed to his loss, although the other, by like fault, has, in some part, caused the injury. Indeed, this rule prevails (unless restricted in the particular case by some positive legislative enactment) in all cases where the mutual faults contributing to the injury are of similar nature, and are equally the efficient and proximate cause.
That the plaintiff’s neglect to restrain his cow upon his own premises, or, in other words, his unlawfully permitting her to run at large and upon the uninclosed lands of the defendant, in some degree, contributed to her death, cannot be questioned. And the same must be said of the defendant’s neglect to fence its road as required by the statute. *592 Neither of these faults, however, was the immediate cause of the injury — that was the immediate result of the collision of the train and the cow, upon the track of the defendant’s road. Nevertheless, if either party had been free from fault that collision would not have occurred ; and it is impossible for us to say that the fault of one was more or less remote from the injury, than that of the other, or that their faults were in any wise dissimilar in their nature — both being the violation of statutory duty.
If the only question, arising upon this demurrer, was, whether or not the conduct of the defendant was such as to render it, prima facie, liable under the statute, we would answer in the affirmative ; but that being conceded, the further question is to be met, — is the plaintiff, whose violation of another statutory duty which, in part, caused the injury, in a situation to demand compensation in a court of law ? This question, upon the principles above stated, must be answered in the negative. In pari delicto melior est conditio defendentis.
It is claimed by defendant in error that, by the statute of 1859, the liability of the parties named therein is absolute and unconditional, and that, in an action thereon, the defense of contributory negligence on the part of the plaintiff cannot be made ; at least, until it be shown that the fault of the plaintiff was wanton, intentional and the immediate cause of the injury. We do not regard tlijs liability to owners of cattle injured by reason of the want of fences, &c., to be in the nature of a penalty ; but are of opinion, that the same liability for neglecting to discharge the duty enjoined, would have arisen by construction, and upon common law principles, if the statute had been silent upon the subject.
Nor do we believe that there is any difference in respect to the application of the doctrine of contributory negligence, between cases where the cause of action is based upon a statute, and those founded upon the principles of the common law, except, as above stated, where the statute imposes the liability by way of penalty merely, or otherwise clearly re *593 stricts the application of the doctrine. 27 Barb. 228 ; 12 Met. 415; 13 Ill. 548 ; 18 N. Y. 422 ; 35 N. Y. 9.
That this statute was intended as a police regulation for the protection of life and property, is not doubted, — it is so-declared in the statute itself, — but its sanction as such is-found in the 5th section of the act, which provides, “ that if any railroad company * * * shall neglect or refuse to construct fences * * * such railroad company shall forfeit and. pay for each and every day * * * any sum not exceeding fifty dollars per day, to be recovered in a civil action in the-name of the State of Ohio, for the use of the county in which-' the suit is brought.” If the liability to pay for stock injured by reason of the want of fences, <fec., was intended as a penalty for not fencing, it would make no difference as to the-right of the plaintiff to recover, whether his negligence contributed to the injury or not, nor whether such contributory-negligence was intentional and wanton or not; yet it is-admitted by defendant in error, and we think properly, that willful negligence on the part of a plaintiff would defeat his-right of action under the statute. -
The object, therefore, of the rule under consideration, is to-leave the parties who are equally guilty of a wrong which has contributed to the injury of either, just where the law finds-them — neither to afford protection against the consequences-of negligence on the one side, nor to give indulgence to it on the other.
Nor do we think the further claim of the defendant in. error can be sustained, to wit, that because the act of 1859, declaring the liability of railroad companies for not fencing their roads, was passed prior to the act of 1865, to restrain cattle from running at large, &c., therefore, the violation of the latter cannot be set up as a defence to an action for the violation of the former. Had the cause of action sued on accrued before the passage of the latter act, the position would be maintainable ; but as to causes of action accruing-after its passage, the relation of the parties is different. That which was lawful before the passage of the act of 1865, is-now unlawful, — a duty on the part of owners of cattle- *594 towards the owners of uninclosed lands is now imposed which did not exist before ; and by this change of duty, the legislature intended, it must be presumed, a corresponding change in the rights of the parties. And the rights of parties touching the subject matter of an action cannot be determined by the state of the law at a previous time, but the time the subject matter arose.
If this were to be determined alone upon the authority of decided cases, it would not be entirely free from difficulty ; but even then we think the weight of authority would be found in favor of the conclusions above expressed. Perkins v. The Eastern R. R. Co. 29 Maine, 307, is directly in point, and fully sustains these views. So, also, with more or less force, are the cases in 25 Vermont, 150 ; 17 Maryland, 32, and 54 Illinois, 528.
In support of the opposite view, the strongest case to which our attention has been called is Corwin v. The New York & Erie R. R. Co. 3 Kernan, 42. The facts of that case are, on all fours, with the case in hand ; but the difference between the terms of the statute of New York on the subject of fencing railroads, and of our own, is quite sufficient to justify the difference in the conclusions. After requiring railroad corporations to fence their roads, the statute of that State declares that, “ until such fences and cattle-guards shall be duly made, the corporation and its agents shall be liable for all damages which shall be done by their agents or engines to cattle, horses, or other animals thereon.” By that statute, it will be obsexwed, the immediate cause of the injury, to wit: the act of “ their agents or engines,” is made the ground of liability, and that, too, without any reference to the fact whether the want of fences does or does not contribute thereto. Yet it is conceded by the judges delivering opinions in that case, that “ should it' appear that the plaintiff drove his cattle xxpon the road, or in the neighborhood of the road, and left them there, or did any other positive act increasing the danger to his cattle, a very different question would arise. The maxim, volenti non fit injuria, would then apply.”
*595 But, by our statute, the liability is only incurred when the injury results “ by reason of the want or insufficiency of fences, road crossings or cattle-guards, or by any carelessness or negligence of such company, party, or agent, or agents thereof,Now, under our statute, it may be conceded that if the injury results from the carelessness or negligence of the company or its agents in the management of the train, the owner would be entitled to recover, as in Corwin’s case, unless his fault was also an immediate cause of the injury; as, for instance, if he had driven his cow upon the road, or in the neighborhood of the road, and had left her there, or had done some other positive act increasing her danger. And this would be so, whether the road was fenced, as required by the statute, or not, or whether the injury resulted by reason of the want or insufficiency of fences, &c., or not. But if the remoter cause of injury, to wit, the want of fences, &e., is relied upon as the sole ground for recovery, then the remoter negligence of the plaintiff, to wit, his permitting his cow to run at large upon the uninclosed lands of the defendant, in violation of his duty under the statute, may be pleaded in defence of his action, for, volenti non fit injuria, — in such case, the owner of the cattle must be regarded as voluntarily assuming the risk of injury from such negligence of the railroad company as is quite as remote from the injury as his own; nor should he be permitted to say that he was injured solely “ by reason of the want of fences,” when, in truth, he was injured “ by permitting his cow to run at large.”
We have examined several cases from other States, based upon statutes also dissimilar to ours, but can derive little or no benefit from them as authoritative expositions of our own law.
It should be also added, that we are unable to draw any inferences from the proviso in the 5th section of the act of 1865, which at all conflicts with the conclusions above expressed. The purview of this section makes the owner of cattle who allows them to run at large, in violation of the act, liable for all damages done by such animals upon the *596 premises of another, “ without reference to the fences which? may inclose such premises.” The proviso simply exempts such owner from liability “for damages arising to any railroad.” The enormous disparity between the damages which otherwise might be recovered at the suit of a railroad company against such owner, and the ordinary consequences of the prohibited act, no doubt induced the legislature to throw the protection of this proviso around the violator of its statute. But, certainly, it was not intended thereby to place in his hands a weapon for the purpose of doing injury to a, railroad, for which he would be responsible in damages if inflicted upon any other person or corporation.
Judgment of the district court and the court of common, pleas reversed, demurrer to answer overruled, and cause-remanded, &c.
Welch, C, J., and White, Day and West, JJ., concurred.