JOHN MITCHELL *vs.* THE STATE OF MARYLAND.

*Appeal in Criminal Cases—Attempt to Commit Rape—Cruel and Unusual Punishment—Misdemeanors.*

No appeal lies from a sentence of a Court of criminal jurisdiction when no exception to the rulings was taken below, or motion in arrest, or petition filed designating the points of law by the decision of which the appellant is aggrieved.

The appellant was convicted below of an attempt to commit rape upon a child uuder circumstances of great atrocity, and was sentenced by the Court to confinement for fifteen years in jail. *Held*,

1st. That this sentence was not a cruel and unusual punishment within the constitutional prohibition.

2nd. That the offence of which the appellant was convicted being a misdemeanor, was punishable by fine and imprisonment, in the discretion of the Court.

Appeal from the Criminal Court of Baltimore.   The facts are stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*Thomas C. Ruddell* (with whom was *Sidney Hall* on the brief), for the appellant.

While it is true that the term of imprisonment is in the discretion of the Court, yet a Court could not legally give any term of years for any common law offence.   For instance, an attempt to steal goods under the value of $5 could not be punished by more than eighteen months imprisonment, that being the longest period which the Code allows for the crime of stealing goods under $5 in value. So we claim that while the term of imprisonment is in the discretion of the Court, yet the Court cannot give for the attempt to commit a crime a longer term than the Code fixes for the completed offence, and this is one lim-

itation on the discretionary power of the Court in passing sentence for attempts to commit offences. The highest punishment for burglary is ten years ; an attempt to commit burglary cannot be punishable by fifteen years. If this limitation is a true one, is not the sentence in this case in conflict with it?

Under the head of rape we find in the Code two sections : 1st. Punishment for the common law offence of rape ; and, 2d. For the carnal knowledge of female children, and in the Acts of 1890, chapter 410, we find that the Legislature, under the head of rape, makes an alteration in the law concerning carnal knowledge of female children, so we claim that the Legislature has made the offence of carnal knowledge of female children a rape. It was a rape at common law. *Hawkins*, in chapter 41, vol. 1, says : " Offences relating to women made felonies by statute are of three kinds: 1, rape ; 2, forcible marriages ; 3, seduction. In treating of rape, I shall consider, 1st, what shall be called rape. As to this, it seems that rape is an offence in having unlawful and carnal knowledge of a woman by force and against her will. It was a question before 18 Eliz. whether a rape could be committed on a child of the age of six or seven ; but by that statute any one carnally knowing and abusing any woman child under the age of ten shall suffer death." This author says a doubt having arisen as to this offence, Parliament set that doubt at rest by the statute. *Foster*, in his treatise, says : "It having been doubtful whether a rape could be commited on a child under ten, it was provided for by a plain declaration of the law." We claim that at common law and under our Code, that the carnal knowledge of a female child is a rape. If this is not so, then our Legislature has provided a severer punishment for an assault with intent to commit a rape on a woman, but has left the case of an assault with intent to commit a rape or with intent to have carnal knowledge of a child without a proper punishment. If a man who assaults a woman should go to the peniten-

tiary, surely one who assaults a child should go there too. If this position is true, the following results will follow: 1st. Carnal knowledge of a female child is a rape. 2d. An assault to commit such an offence cannot be punished under our Code by longer than ten years confinement. 3d. An attempt to commit the offence cannot be a greater crime than an assault with intent to commit it. It is, however, a lesser offence. The least unlawful touching of the child, with such an intent, would be an assault, and when the jury found the prisoner not guilty of an assault it negatives any unlawful touching of the child. If for the full offence, viz., an assault with intent, no longer than ten years can be given, then no longer than ten years should have been given for the lesser offence.

Our practice in Baltimore City has been to give not more than two years in jail for any misdemeanor, the punishment of which was not provided for in the Code. Twenty years ago a ruffian who was charged with conspiracy in the Criminal Court moved his case to Annapolis, where he was convicted and sentenced to three years in Baltimore City jail. At the time his sentence was commented upon, and it was said that he could not have gotten more than two years if he had not moved his case. No person received more than two years from that time until the present, except when Judge Harlan sentenced a prisoner for five years in jail; this happened about two years ago. We do not know what the practice has been in the counties, yet we believe that a sentence of fifteen years in jail would be regarded as very unusual.

The policy of our laws seems to be against long jail sentences. Authorities are few and far between. The case of *Lord Devonshire*, 11 State Trials, decided that not only was thirty thousand pounds too great a fine for common law misdemeanors, but also that the Judges who gave it deserved a severe reprimand for doing so, and the Hon. Court, Wright, Powell and another were placed at the bar to answer for their faults. Then we have the case of *Driver*, 78 N. C.,

where the Court thought that five years in jail for an assault was excessive and unusual, and directed the Court to fit the punishment to the crime.

*John Prentiss Poe, Attorney-General,* for the appellee.

The punishment prescribed by the statute for the consummated offence (1890, chap. 410) is, " in the discretion of the Court, death or imprisonment for life in the penitentiary, or for a definite period, not less than eighteen months or more than twenty-one years." There is no provision prescribing the punishment for such attempted assault, and inasmuch as the offence of which the appellant was convicted is a misdemeanor, the punishment was necessarily within the discretion of the Court. While severe, it is not " cruel nor unusual." 4 *Am. and Eng. Encycl. of Law,* 722 ; *Ligan* v. *State,* 3 Heisk, 159 ; 1 *Bishop on Crim. Law,* secs. 942 and 948. The question here is simply whether the Court below in sentencing the appellant to imprisonment for fifteen years in jail for a most serious misdemeanor, went beyond a fair and reasonable discretion. There is nothing in the record to show that he did, and hence no reason apppears for a reversal of the judgment.

BRYAN, J., delivered the opinion of the Court.

John Mitchell was indicted in the Criminal Court of Baltimore on three counts. The first charged that he with force and arms feloniously did carnally know and abuse a certain Elizabeth Roth, who was then and there a woman-child under the age of fourteen years. The second count charged an unlawful, wicked and corrupt attempt to commit this offence. The third charged simply an assault and battery. The traverser pleaded not guilty and the jury convicted him on the second count, but acquitted him on the other two. The Court sentenced him to imprisonment in jail for the term of fifteen years. He has appealed to this Court.

We regret that the record in this case does not present any question which we have the power to review. Except in the comparatively unimportant cases mentioned in the

Act of 1785, chapter 7, section 6, there was no appeal in criminal cases before the Act of 1872. This act has been several times amended; but it has received its present shape from the Act of 1892, chapter 506. It is there enacted among other things as follows: "Sec. 77. The parties to criminal proceedings shall be entitled to bills of exceptions, in the same manner as in civil proceedings, and appeals from judgments in criminal cases may be taken in the same manner as in civil cases; but no appeal in a criminal case shall stay execution of sentence unless the counsel for the accused shall make oath that the appeal is not taken for delay, and such appeal shall be heard at the earliest convenient day after the same shall have been transmitted to the Court of Appeals." By this Act, when an appeal is taken in a criminal case, the proceedings are to be the same as in a civil case. By the express provisions of the statute law, this Court in a case on the civil side of the docket is prevented from deciding any point or question which does not plainly appear by the record to have been tried and decided in the Court below. *Code*, Art. 5, section 9. The point must be made, and in a case requiring an exception, a bill of exceptions must be taken. In *Cushwa* v. *Cushwa's lessee*, 5 Md. 54, there was a verdict in ejectment for five hundred dollars damages, and judgment on the verdict. This Court said, "Because the verdict gave five hundred dollars damages, it is contended that inasmuch as no such damage could be legally given in an action of ejectment, the judgment is erroneous, although in accordance with the verdict, and therefore should be reversed. But no question on this subject was raised below, and no motion in arrest of judgment having been made, the Act of 1825, ch. 117, will not allow such a question to be raised in this Court." This judgment was rendered on the twenty-sixth of September; no exception was taken; and on the second of October an appeal was taken. If the traverser instead of appealing had sought to remove the record, as upon writ of error, it would have been necessary for him to address a

petition to the Court plainly designating the points or questions of law, by the decision of which he felt 'aggrieved; and no point or question not thus plainly designated could have been heard or determined by this Court. *Code*, Art. 5, section 16.

None of the evidence appears in the record. Although we cannot review the judgment, yet as a matter of justice to the humane and enlightened Judge who pronounced the sentence, we think that the facts in the case ought to be known. At the request of one of the Judges of this Court, he has made a statement of them. " The traverser was indicted upon three counts : 1st, for carnal knowledge of a female child under the age of 14 years ; 2nd, an assault with the intent to commit that offence, and 3rd, for a common assault. He was promptly convicted by the jury upon the 2nd count, the evidence failing to show actual penetration, which was necessary for conviction upon the 1st count. I sentenced him to 15 years in jail. The evidence was that the traverser was a negro about 26 years old, and his victim a delicate white child just four years old. He decoyed her into his room, during the absence of the child's mother at church, and twice attempted connection with her—once upon the floor, and again upon his bed. The child was badly bruised and somewhat lacerated, and was given a case of gonorrhea, for which she was under treatment for nine weeks, and the medical testimony was that she was permanently impaired in certain functions of the bladder and kidneys. These were the facts overwhelmingly established by the testimony, and the case was one in which, had the evidence justified a conviction upon the first count, I would have imposed the death penalty."

It has been maintained that this sentence is within the inhibition of the twenty-fifth Article of the Declaration of Rights, which is in these words : "That excessive bail ought not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted by the Courts of law." This article is copied almost word for word from *Statute* 1, *W.*

& *M.*, chapter 2, which was passed immediately after the expulsion of the Stuarts. It was entitled "An Act declaring the rights and liberties of the subject, and settling the succession of the crown," and after reciting, among other grievances, that "excessive bail hath been required of persons committed in criminal cases, to elude the benefit of the laws made for the liberty of the subjects, and excessive fines have been imposed, and illegal and cruel punishments inflicted, it is declared that "excessive bail ought not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." History informs us that it was intended by the supreme legislative power as a solemn condemnation of the arbitrary and oppressive proceedings which had taken place in the Courts during the preceding reigns. We read on the face of the statute that " excessive bail had been required  *  *  *  *  to elude the benefit of the laws made for the liberty of the subjects, and illegal and cruel punishments " had been inflicted. In other words, it was a declaration that the Courts had been used as instruments to overthrow the liberty of the subject, and to perpetrate great injustice. The new dynasty desired to give the most explicit and authentic assurance to the English nation, that the dark and bloody scenes which had been enacted in the Courts should be witnessed no more again forever. But from two signal instances, it may be seen that it was not their purpose to dispense with punishments of great severity. For more than a century after this statute the law allotted the agonizing death by hanging, drawing and quartering to men who were convicted of high treason ; while women who were guilty of any form of treason were burned alive. Our own Declaration of Rights ought to be interpreted in harmony with the humane spirit of our Christian civilization. Our law inflicts pain not in a spirit of vengeance, but to promote the essential purposes of public justice. Severity is not cruelty. The punishment ought to bear a due proportion to the offence. Crimes of great atrocity ought to be visited with such penalties as would

check, if not prevent their commission. It is impossible in the abstract to mark the boundaries which separate cruelty from just severity. If the circumstances accompanying a crime are of unusual aggravation the punishment ought to be unusually severe. But the Courts must adopt the methods of punishment prescribed by law. No one ought to imagine that in a free country a Court would have the power to devise new and singular modes of punishment. Its duty is "*dicere non facere legem.*" Even where the law confides to the Judge the imposition of the sentence without definite limit, it still may be possible to violate the Declaration of Rights. If the punishment is grossly and inordinately disproportionate to the offence so that the sentence is evidently dictated not by a sense of public duty, but by passion, prejudice, ill-will or any other unworthy motive, the judgment ought to be reversed, and the cause remanded for a more just sentence. But no such instance of judicial misconduct has ever occurred in our good old State, and we trust that the day may never come when it will be witnessed. When the discretion which the law confers is exercised with a sedate and conscientious judgment under the influence of a love of public justice, and a desire to promote it, the Judge is acting in the legitimate discharge of his duty and his sentence is not subject to reversal.

We refrain from examining the horrible details of the crime which the traverser committed. It exceeds in its malignity and depravity the crime of deliberate murder. And the wretched culprit barely escaped the just punishment of death by a technicality which shelters the commission of the worst of crimes, and which ought to be rooted out of our law. The verdict of the jury convicted the traverser of an offence which the law places in the category of misdemeanors. These are punishable by fine and imprisonment in the discretion of the Court. As the judgment of the Court is not properly before us for review, we will dismiss this appeal.

*Appeal dismissed.*