## WILEY *v.* STATE

[No. 173, September Term, 1964.]

*Decided March 2, 1965.*

The cause was argued before Prescott, C. J., and Hammond, Horney, Marbury and Oppenheimer, JJ.

*Harvey N. Zimmerman* for appellant.

*Carville M. Downes, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Charles E. Moylan, Jr.* and *Stanley A. Cohen, State's Attorney* and *Assistant State's Attorney,* respectively, *for Baltimore City,* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

The appellant Wiley seeks to reverse his convictions on charges of attempting to break into a real estate office with intent to steal goods and monies therein, and of being a rogue and vagabond, on the grounds that the trial judge erred in his charge to the jury, (a) in not instructing that if Wiley "* * * had attempted to break and enter the premises but prior to his entry voluntarily abandoned his effort * * *" their verdict must be for Wiley, (b) in instructing the jury that if Wiley had done an overt act in furtherance of his intended effort to break into the office he had committed the crime of attempt charged, even though thereafter he had voluntarily abandoned his attempt and left the premises before he succeeded in the breaking, and (c) in instructing "* * * that a man can be guilty of a rogue and vagabond offense if he merely walks up to a door with a crowbar in his hand and if you can find from that he intended to break in * * *" (the ground of objection to the last instruction is that it omits the requirement the appellant thinks necessary, that there must be a concurrently existing felonious intent).

A police officer testified that he surprised Wiley and another man (who turned out to be Wiley's brother) in a vestibule at twelve-twenty a.m. on a Saturday, tampering with the door of a real estate office on Pennsylvania Avenue in Baltimore. Wiley had wedged a large pinch bar between the door and the jamb, aimed at the lock, and was trying to pry the door open by pushing on the bar and using the weight of his body. His brother was trying to help with a screw driver.

The owner of the real estate office said that when he closed the place at noon on Friday the door was in normal working order and unmarred, and when he arrived on Saturday morning, in response to a call from the police, he could not open the door, the jamb looked like it had been "scraped with some instrument" and the door lock, even after a locksmith had worked on it, was still bent.

Wiley's version of the incident was that he intended to break in the office and had started to break in and that "* * * I had only hit the door with it [the pinch bar] twice * * * and * * *

I just got scared and I abandoned the idea of breaking in the place." He said the screw driver and pinch bar were his and he had laid them on the door sill and walked down the street, when a few seconds later, three doors away, the officer arrested him.

In addition to the standard instructions as to the presumption of innocence and the burden of the State to prove guilt beyond a reasonable doubt, Judge Grady charged the jury that they were the judges of both the law of the case and the facts of the case and, consequently, what he said to them about the law was no more than the court's interpretation of what the applicable law is. He told the jury: "You are at liberty to disagree with the Court's interpretation of the law and you shall determine what the law is yourselves and then apply the law as you find it to the facts as you find them and render your verdict accordingly."

As to the charge of attempt, Judge Grady said to the jury:

> "In this case I advise you that this man, you may find from all the evidence, had some idea, something in his mind, and that you may find from the evidence that he actually began to put this intention into execution, but that he was stopped, according to the State's evidence, or according to his own evidence he stopped voluntarily. I advise you that if you believe this man had in his mind the idea of breaking and entering these premises and pursuant to that idea then did a physical act by inserting an instrument into the door and prying on the door, then I advise you at that moment an attempt to enter has been completed and whether he then discontinued the attempt or whether he was interrupted in the attempt is of very little importance, because the crime had already been committed, namely, an effort combined with a plan to go into these premises."

Wileys' complaint, that the judge erroneously and to his prejudice did not instruct the jury that they should find him innocent if they found that after an initial attempt to break and enter the office, he voluntarily abandoned his effort, is unjustified. The law is to the contrary. An attempt to commit a crime

consists of an intent to commit it, the performance of some act towards its commission, and failure to consummate its commission. 22 C. J. S. *Criminal Law* Sec. 75 (1), p. 228, and Hochheimer, *Crimes and Criminal Procedure* (2d Ed.), Sec. 266, p. 297. The text writers and the cases agree that generally, if one who has intended to attempt to commit a crime freely and voluntarily abandons the idea before it has progressed beyond mere preparation, he has not committed the crime of attempt; but that a voluntary abandonment of an attempt which has proceeded beyond mere preparation into an overt act or acts in furtherance of the commission of the attempt does not expiate the guilt of, or forbid punishment for, the crime already committed. 22 C. J. S. *Criminal Law* Sec. 76, p. 234; *Clark and Marshall, Crimes* (5th Ed.), Sec. 121, p. 178; 1 *Wharton's Criminal Law* (12th Ed.), Sec. 226, p. 305; 1 Bishop, *Criminal Law* (9th Ed.), Secs. 208 (a), 732, 733; *People v. Robinson* (Dist. Ct. App. 2d Dis.), 4 Cal. Rptr. 679; *People v. Stewart* (Calif.), 32 Pac. 8; *Glover v. Commonwealth* (Va.), 10 S. E. 420, 421; *Huggins v. State* (Ct. App. Ala.), 142 So. 2d 915, *cert. den.* 142 So. 2d 918.

Judge Grady's instructions on the crime of attempt correctly stated to the jury the applicable law. An accused is not entitled to an instruction of law if there has been no evidence in the case which will support the instruction or to which it could be applied. Wiley's own testimony left no room for a finding that he had abandoned his intent to break into the real estate office before he had committed the overt act of using the pinch bar to accomplish his purpose and, short of testimony which would have permitted such a finding of fact, he was not entitled to have the jury told that they could find him not guilty because of abandonment of his intent to break in and steal. Once that intent had been furthered by an overt effort towards its consummation—and Wiley testified that this was the fact — the crime of attempt to break in in order to steal was complete and, as the court told the jury, it was immaterial as a matter of law whether Wiley stopped the attempt because he was interrupted by the police, as the State showed, or whether he voluntarily discontinued his efforts, as he said.

Judge Grady closed his statements on this phase of the case with this sentence:

"Of course, the State's evidence is the attempt was still in progress when the officer arrived on the scene, whereas I advise you that the defendant's evidence is that the attempt had already been completed and committed and that he was leaving the scene after attempting to break into these premises. I advise you that under either circumstances *it appears to me that the violation has been committed as charged in the fourth count of the indictment*" (Emphasis supplied)

and Wiley says that because of the use of the italicized words the trial judge improperly usurped the function of the jury to decide the facts and the law.

Inasmuch as Wiley had conceded from the stand that he had actually physically begun the attempt to break in, the court's phrase in the sentence complained of, that under either the state's testimony or that of Wiley "* * * it appears to me that the violation has been committed as charged in the fourth count of the indictment" was no more, in the context of the charge as a whole, than an instruction as to "* * * the Court's opinion of what the law is and the manner in which the Court interprets it," to use the judge's own earlier words. Since the instruction was correct on the law applicable to the admitted facts and the jury also had been instructed by the judge that they were free to disagree with the court's interpretation of the law and could determine it for themselves, as they could the facts, no prejudicial error arose from the form in which the court phrased the conclusion of his charge on the crime of attempt.

The instruction on the law of the crime of being a rogue and vagabond likewise was not erroneous. Code (1957), Art. 27, Sec. 490, makes it a crime to be in possession of burglar tools "* * * at places and under circumstances from which an intent may be presumed feloniously to break and enter * * *" specified buildings, and it also makes it a crime to be found in or upon specified buildings "with an intent to steal any goods or chattels." The testimony of the police (and that of Wiley) permitted a finding of guilt on the second offense provided for in Sec. 490, and the court's charge correctly stated the law as to that offense.

*Judgment affirmed.*