LAWRENCE SAMUEL GRAY A/K/A LAWRANCE SAMUEL GRAY A/K/A LAUNCE SAMUEL GRAY *v.* STATE OF MARYLAND

[No. 1410, September Term, 1978.]

*Decided July 16, 1979.*

The cause was argued before GILBERT, C. J., and MOYLAN and LISS, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Kathleen M. Sweeney, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Michael P. Whalen, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

Despite the urgings of the appellant, Lawrence Samuel Gray, to the contrary, the common law is still alive and well in Maryland. More particularly, that portion of the common law which we today hold still prospers upon these shores is the common law misdemeanor of criminal attempt.

A word, first, as to it. The notion that an attempt to commit a crime — any crime, felony or misdemeanor, statutory or common law, preexisting or of later origin — is itself a crime came relatively late into Anglo-American jurisprudence. It had its origins in the Court of Star Chamber, during Tudor and early Stuart times.[1] Its crystallization into its present form, however, is generally traced to the case of *Rex v. Scofield,* Cald. 397, in 1784.[2] The court held in *Rex v. Scofield,* "The intent may make an act, innocent in itself, criminal; nor is the completion of an act, criminal in itself, necessary to constitute criminality." The doctrine was locked into its modern mold by 1801 with the case of *Rex v. Higgins,* 2 East 5. Relying on *Scofield,* the court in *Higgins* confirmed a conviction, saying, "All offenses of a public nature, that is, all such acts or attempts as tend to the prejudice of the community, are indictable." In the wake of *Scofield* and *Higgins,* it was clear that an attempt to commit any felony or misdemeanor, of common law origin or created by statute, was itself a misdemeanor.

The crime of criminal attempt consisted of 1) a specific intent to do a criminal act and 2) some act in furtherance of that intent going beyond mere preparation. LaFave and Scott, *supra,* p. 423; Perkins, *Criminal Law* (2nd Ed. 1969), p. 552.

It is, furthermore, clear that the common law misdemeanor of criminal attempt, notwithstanding its post-Revolutionary final crystallization, has always been recognized as part of the common law of Maryland. Hochheimer, *Crimes and Criminal Procedure* (2nd Ed. 1904), p. 297-298; *Franczkowski v. State,* 239 Md. 126, 127, 210 A. 2d 504 (1965); *Wiley v. State,*

---

1. See generally Sayre, *Criminal Attempts,* 41 Harv. L. Rev. 821 (1928), and Hall, *General Principles of Criminal Law,* 558-74 (2nd Ed. 1960).
2. LaFave and Scott, *Criminal Law* (1972), p. 424.

237 Md. 560, 563-564, 207 A. 2d 478 (1965); *Lightfoot v. State,* 278 Md. 231, 360 A. 2d 426 (1976); *Lightfoot v. State,* 25 Md. App. 148, 334 A. 2d 152 (1975); *Fisher v. State,* 1 Md. App. 505, 231 A. 2d 720 (1967).

We turn now to the appellant's central thesis. He was convicted by a Prince George's County jury, presided over by Judge Albert T. Blackwell, of attempted second degree rape and false imprisonment. He received a ten-year sentence for the attempt and a concurrent five-year sentence for the false imprisonment. He now argues that there is no such crime as attempted second degree rape.

The thrust of the appellant's argument is that the General Assembly by Chapter 573 of the Acts of 1976 preempted the "Sexual Offenses" field when it repealed a number of preexisting statutes dealing with rape and related offenses and enacted in their stead the present Sections 461-465 of Article 27. The appellant relies heavily upon the editorial comment from "Rape and Other Sexual Offenses Law Reform in Maryland, 1976-1977," 7 U. of Balto. L. Rev. 150, 152 (1977):

> "During the 1976 and 1977 legislative sessions, the Maryland Legislature enacted significant and comprehensive legislation which codified Maryland law on rape and other sexual offenses."

We cannot agree with the appellant's position. We note initially that the Legislature gave no indication that it intended the new subtitle to repeal or replace the common law misdemeanor of criminal attempt with respect to the substantive offenses it was then enacting. Indeed, the operative sections — § 462 (First degree rape); § 463 (Second degree rape); § 464 (First degree sexual offense); § 464A (Second degree sexual offense); § 464B (Third degree sexual offense) and § 464C (Fourth degree sexual offense) — embrace only consummated conduct and not attempts to commit the same.

Additional evidence of the fact that the Legislature did not intend to preempt the entire field of criminal sexual activity

was the non-repealer of § 553 (Sodomy) and § 554 (Unnatural or perverted sexual practices).[3]

Even confined to non-consensual sexual activity, the appellant's argument as to total preemption of the field must fail. The Legislature, in enacting the new "Sexual Offenses" subtitle did not repeal § 12 dealing with assault with intent to rape.[4]

For inchoate, not fully-consummated crime, society has long had available in its arsenal both the statutory offense of "assault with intent to . . ." and the common law offense of criminal attempt. Although these two offenses have a significant overlap, they are nonetheless distinct and each addresses certain pockets of inchoate criminal activity not covered by the other.[5]

Before turning specifically to the impact of the newly articulated statutory offense upon the inchoate crime of attempting to commit the new statutory offense, an additional preliminary word is in order about the spirit with which we approach the possible erosion of our common law. That spirit can best be understood when we remember that the common law of England is constitutionally guaranteed to the citizens of Maryland — that in enacting our very charter of liberty we provided "That the Inhabitants of Maryland are entitled to the Common Law of England. . . ." [6] The protection of our citizens against inchoate crime is part of that original entitlement, embedded in our very charter of statehood, and we do not lightly — by mere implication — dissolve so venerable a guarantee.

---

3. It cannot be claimed that the Legislature overlooked these sections for the same Chapter 573 of the Acts of 1976 which restructured the rape and rape-related offenses also made several minor stylistic changes to § 553 and § 554.

4. Again, a definitional change and a change in the maximum sentence was made by Chapter 290 of the Acts of 1977, indicating *inter alia,* that the Legislature was well aware that § 12 was still viable. See also *Christensen v. State,* 33 Md. App. 635, 365 A. 2d 562 (1976).

5. For an analysis of the similarities and the differences, see the excellent discussion by Chief Judge Gilbert in *Christensen v. State, supra.*

6. Article 5, Maryland Declaration of Rights.

This attitude was early expressed by *Hooper v. Baltimore,* 12 Md. 464, 475 (1859):

> "In *Dwarris on Statutes,* 695, it is said, 'As a rule of exposition, statutes are to be construed in reference to the *principles* of the common law. For it is not to be presumed that the Legislature intended to make any innovation upon the common law, further than the case absolutely required. The law rather infers that the Act did *not* intend to make any alteration *other* than what is *specified,* and besides *what has been plainly pronounced.'* " (Emphasis in original) See also *Keech v. Baltimore & Washington R. Co.,* 17 Md. 32, 45 (1861); *Harrison v. State,* 22 Md. 468, 488 (1864); *Greenwood v. Greenwood,* 28 Md. 370, 386 (1868); *Heiskell v. Baltimore,* 65 Md. 125, 151, 4 A. 116 (1886).

In *Lutz v. State,* 167 Md. 12, 172 A. 354 (1934), the appellant claimed that the newly enacted (1920) statute proscribing "Prostitution, Lewdness and Assignation" superseded and thereby repealed the common law offenses of maintaining a bawdy house and maintaining a disorderly house. In holding otherwise, the Court of Appeals said at 167 Md. 15:

> "In 25 R. C. L. 1054, it is said that: 'It has been said that statutes are not presumed to make any alterations in the common law further than is expressly declared, and that a statute, made in the affirmative without any negative expressed or implied, does not take away the common law. The rules of the common law are not to be changed by doubtful implication, nor overturned except by clear and unambiguous language. In order to hold that a statute has abrogated common law rights existing at the date of its enactment, it must clearly appear that they are repugnant to the act, or the part thereof invoked, that their survival would in effect deprive it of its efficacy and render its provisions nugatory.'
>
> Where however, a statute and the common law are

in conflict, the common law yields to the statute to the extent of the inconsistency (*Sutherland on Stat. Const.* sec. 294; 12 C.J. 186), and a statute which deals with an entire subject matter is generally construed as abrogating the common law as to that subject."

See also *Gleaton v. State,* 235 Md. 271, 277, 201 A. 2d 353 (1964); *State v. Gibson,* 4 Md. App. 236, 247, 242 A. 2d 575 (1968); *Watkins and Kingwood v. State,* 42 Md. App. 349, 400 A. 2d 464 (1979).

The Maryland attitude is consistent with that of our sister legatees of the common law tradition. The general rule in this regard is discussed in 3 Sutherland *Statutory Construction* 41 (Sands ed. 1974):

"... The rule has been declared by the United States Supreme Court, as follows: 'No statute is to be construed as altering the common law, further than its words import. It is not to be construed as making any innovation upon the common law which it does not fairly express.' "

The statutory crime now in issue is § 463 (Second degree rape):

"(a) *What Constitutes.* — A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person:

(1) By force or threat of force against the will and without the consent of the other person; or

(2) Who is mentally defective, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know the other person is mentally defective, mentally incapacitated, or physically helpless; or

(3) Who is under 14 years of age and the person performing the act is at least four years older than the victim."

Putting aside for a moment the mechanism spelled out in

subsection (1) or the status of the victims spelled out in subsections (2) and (3), the operative verbal phrase is "engages in vaginal intercourse." It is obvious that one might specifically intend vaginal intercourse and might take some step beyond mere preparation in execution of that intent (the two necessary elements for the common law misdemeanor of criminal attempt) and yet might fail to consummate the intended act. Since § 463 does not proscribe the attempted perpetration of the crime, it clearly does not preempt the field in that regard. The appellant goes further and urges that any such attempt would, in any event, fall under the umbrella of § 12, proscribing assault with intent to rape.

Once again, it does not take a great flight of imagination to spell out physical acts, beyond mere preparation, in furtherance of an attempted rape which do not necessarily constitute assault.[7]

The hypothetical, below N.7, straight from the "Perils of Pauline," disposes, in passing, of the appellant's back-up position that whatever would be an attempted second degree rape would be, *ipso facto,* a violation of § 464C (a) (1) which provides:

"(a) What constitutes. — A person is guilty of a sexual offense in the fourth degree if the person engages:

(1) In sexual contact with another person against the will and without the consent of the other person."

Once again, it is obvious that there could be many acts, beyond mere preparation, taken in furtherance of an attempted crime which do not involve literal "contact," the

---

7. Picture a resourceful bounder bent upon vaginal intercourse 1) by force or threat of force or 2) with a female under 14 years of age or 3) with a mental defective or mentally incapacitated female. Picture him, further, preparing soft music, candlelight and wine at some isolated place of assignation; luring his intended *inamorata* to the spot by a wide variety of ruses; sending a taxicab to bring her to the trysting place; pouring "knockout" drops into the cup; and then seeing the best laid plans of mice and men go awry only at the last available moment, when the fire bell rings just as the would-be victim takes the chalice to her lips. There has been a criminal attempt, and yet there has been no assault. Q.E.D.

*sine qua non* of a fourth degree sexual offense. That § 464C (a) (1) was not intended to be simply the non-consummated version of second degree rape is obvious, looking in either direction. Even where the attempted second degree rape involves sexual contact, it is clear that sexual contact accompanied by a specific intent to rape is a graver offense than sexual contact absent such intent, with its minimal penalty provision of "not more than one year." Looking in the other direction, it is equally clear that every unauthorized caress is not, *ipso facto,* attempted rape.[8] § 464C (a) (1) simply does not preempt the field of attempted rape.

The appellant objects additionally to the use of his testimony at a suppression hearing, as a prior inconsistent statement, to impeach the credibility of later testimony to the contrary. There is nothing in *Simmons v. United States,* 390 U. S. 377, 88 S. Ct. 967, 19 L.Ed.2d 1247 (1968), that precludes the use of testimony at a suppression hearing for such a purpose. *Harris v. New York,* 401 U. S. 222, 91 S. Ct. 643, 28 L.Ed.2d 1 (1971); *Oregon v. Haas,* 420 U. S. 720, 95 S. Ct. 1215, 43 L.Ed.2d 570 (1975).

The appellant also contends that the conviction for false imprisonment should have been merged into the conviction for attempted rape in the second degree. The sentences were concurrent and the point was not preserved for appellate review. Maryland Rule 1085.

The appellant finally contends that his confession was involuntary because it was induced by promises to take him back to work. We have reviewed the transcript thoroughly in this regard and the point is frivolous.

*Judgments affirmed; costs to be paid by appellant.*

---

8. Were the appellant to prevail in this regard, junior proms en masse would have to adjourn from the Belvedere Hotel to the House of Correction.