493 A.2d 352

**Raymond Alexander YOUNG**

v.

**STATE of Maryland.**

**No. 128, Sept. Term, 1984.**

Court of Appeals of Maryland.

June 11, 1985.

Victoria S. Keating, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Valerie V. Cloutier, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on the brief), for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and McAULIFFE, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

**300**

ORTH, Judge.

A crime is a wrong, or breach of duty, which subjects the person guilty thereof to punishment at the suit of the public. The policy of the law is to treat as criminal conduct which affects injuriously the public police and economy, the general interests, peace and security of the community. As a general rule whatever mischievously affects the person or property of another, or openly outrages decency, or disturbs the public order, or is injurious to public morals, or is a wilful breach of official duty, is punishable as a crime at common law. L. Hochheimer, *The Law of Crimes and Criminal Procedure* § 1 (2d ed. 1904).

Not all crimes have their origin in the common law, evolving from the experiences of society. Many crimes have been created by legislative enactment. *See* Maryland Code (1957, 1982 Repl.Vol., 1984 Cum.Supp.) Art. 27.

Since crimes are public wrongs, "against the peace, government and dignity of the State," and, if statutory, are also "contrary to the form of the Act of Assembly in such case made and provided," those who commit crimes are prosecuted by the public in the name of the State. The rationale of the State's seeking redress for a criminal offense is that the person who has committed it has acted contrary to the public interest. He has demonstrated that he is a danger to the public good; he should be deterred from indulging in further criminal activities and reformed so that he will not be inclined to do so again. Thus, the purpose of prosecution for a criminal act is basically preventive.

Usually a criminal conviction is predicated upon the completion of the crime; the conduct of the accused has satisfied the elements necessary to establish the offense and he has actually committed the act as proscribed. But what if the conduct of the accused has not progressed to the point where a crime has been committed, that is, he has tried to commit the offense but for some reason he has not been successful?

[T]here is just as much need to stop, deter and reform a person who has unsuccessfully attempted or is attempting to commit a crime than one who has already committed such an offense. W. LaFave & A. Scott, *Handbook on Criminal Law* § 59 at 426 (1972), quoting Stuart, *The Actus Reus in Attempts*, 1970 Crim.Law.Rev. 505, 511.

This is why the law of attempts exists.

The notion that an attempt to commit a crime is itself a crime came relatively late into Anglo-American jurisprudence. The Court of Special Appeals set out its history in *Gray v. State*, 43 Md.App. 238, 403 A.2d 853, *cert. denied*, 286 Md. 747 (1979):

[The crime of attempt] had its origins in the Court of Star Chamber, during Tudor and early Stuart times. Its crystallization into its present form, however, is generally traced to the case of *Rex v. Scofield*, Cald. 397, in 1784.... The doctrine was locked into its modern mold by 1801 with the case of *Rex v. Higgins*, 2 East 5.... In the wake of *Scofield* and *Higgins*, it was clear that *an attempt to commit any felony or misdemeanor, of common law origin or created by statute, was itself a misdemeanor.* *Id.* at 239 (emphasis added; footnotes omitted).

The offense of criminal attempt has long been accepted as a part of the criminal law of Maryland.[1] We recognized a criminal attempt as a common law misdemeanor in *Mitchell v. State*, 82 Md. 527, 534, 34 A. 246 (1896). We have had surprisingly little to say, however, about the nature of the offense. *Mitchell* concerned an attempted rape, but the appeal was dismissed for procedural reasons and the Court had no occasion to elaborate on the crime. Almost 70 years later, in *Wiley v. State*, 237 Md. 560, 207 A.2d 478 (1965), we defined criminal attempt without citation to a prior decision of this Court. We said:

---

1. Maryland has not enacted a general attempt statute. It has, however, provided by way of legislation that an attempt to commit certain specified crimes is an offense. *See* Appendix A.

An attempt to commit a crime consists of an intent to commit it, the performance of some act toward its commission, and failure to consummate its commission. *Id.* at 563–564, 207 A.2d 478.

The offense was defined in terms of these same three elements in *Franczkowski v. State,* 239 Md. 126, 127, 210 A.2d 504 (1965) with *Wiley* cited as authority. We ultimately discovered, however, that the definition set out in *Wiley* and accepted in *Franczkowski* was not entirely accurate. In *Lightfoot v. State,* 278 Md. 231, 232–238, 360 A.2d 426 (1976), this Court declared that the failure to consummate the commission of a crime attempted was *not* an essential element of the offense of criminal attempt. We found that the language in *Wiley* and *Franczkowski* to the contrary was dicta and we disapproved it.[2] It was also in 1976 that the Legislature prescribed the punishment for criminal attempts generally. Prior to that time, except for statutory designation of attempts to commit certain specified crimes, see note 1, *supra,* the offense of criminal attempts had no statutorily authorized sentencing limit. The penalty upon conviction was within the discretion of the trial court subject to the constitutional prohibitions against cruel or unusual punishment. *See Mitchell* [82 Md]. at 534, 34 A. 246. Acts 1976, Ch. 453, now codified as § 644A of Art. 27, Md.Code (1957, 1982 Repl.Vol.) tempered the discretion of the trial judge by providing:

---

**2.** A result of our determination in *Lightfoot v. State,* 278 Md. 231, 360 A.2d 426 (1976), that the failure to consummate the crime attempted is not an essential element of criminal attempt, is that "where a defendant is charged with both the crime and the attempt to commit it, and where he is acquitted of the crime and convicted of the attempt, the attempt conviction may stand even though the evidence established that the crime was fully consummated." *Id.* at 238, 360 A.2d 426.

The Court in *Lightfoot* noted that the Court of Special Appeals, apparently following the lead of *Wiley v. State,* 237 Md. 560, 207 A.2d 478 (1965) and *Franczkowski v. State,* 239 Md. 126, 210 A.2d 504 (1965), had similarly stated in a number of cases prior to its opinion in *Lightfoot* that non-consummation of the crime is an element of criminal attempt. 278 Md. at 237 n. 5, 360 A.2d 426.

The sentence of a person who is convicted of an attempt to commit a crime may not exceed the maximum sentence for the crime attempted.

This legislation led to the question presented in *Hardy v. State*, 301 Md. 124, 482 A.2d 474 (1984): whether the maximum punishment for attempted murder was determined by the maximum punishment for assault with intent to murder. Holding that it was not, we recognized that Maryland has retained the crime of attempt as a common law misdemeanor. *Id.* at 128, 482 A.2d 474. We said that the offense is "generally defined as the intent to commit a crime coupled with some overt act beyond mere preparation in furtherance of the crime," *id.*, citing *Lightfoot* and *Wiley*. We did not elaborate on this definition.

Our opinions leave much unanswered. The application of particular facts to the law of criminal attempts frequently gives rise to problems in one or more of three aspects:

(1) The determination of the overt act which is beyond mere preparation in furtherance of the commission of the crime.

(2) At what point may the attempt to commit the intended crime be abandoned so as to escape liability.

(3) What is the effect on culpability of impossibility to commit the intended crime.

This Court has addressed only the abandonment aspect. *Wiley v. State*, 237 Md. at 564–565, 207 A.2d 478. The Court of Special Appeals has been exposed to the offense of criminal attempt in a number of cases. *See* note 2 *supra*. *Gray v. State*, 43 Md.App. at 239, 403 A.2d 853 rephrased the *Wiley* definition of attempt in terms of *Lightfoot* to read that a criminal attempt consists of "1) a specific intent to do a criminal act and 2) some act in furtherance of that intent going beyond mere preparation." The intermediate appellate court dealt with the impossibility aspect of criminal attempts in two cases, *In Re Appeal No. 568, Term 1974*, 25 Md.App. 218, 220–223, 333 A.2d 649, *cert. denied*, 275 Md. 751 (1975) and *Waters v. State*, 2 Md.App. 216,

226–228, 234 A.2d 147 (1967), *cert. denied,* 259 Md. 737 (1970). It discussed the aspect of "the overt act beyond mere preparation" in *Frye v. State,* 62 Md.App. 310, 489 A.2d 71 (1985). As yet we have not indicated our approval or disapproval of the views expressed in those cases.

Such was the posture of the law of Maryland regarding criminal attempts when Raymond Alexander Young, also known as Morris Prince Cunningham and Prince Alexander Love, was found guilty by a jury in the Circuit Court for Prince George's County of two crimes: (1) the attempted armed robbery of the manager of the Fort Washington, Md. branch of the First National Bank of Southern Maryland (the Bank) and (2) transporting a handgun. He was sentenced to 20 years on the attempt conviction and to a consecutive three year sentence on the handgun conviction.[3] The Court of Special Appeals affirmed the judgments in an unreported per curiam opinion, *Young v. State,* No. 1429, September Term, 1983, filed 14 August 1984. Upon Young's petition we ordered that the record and proceedings be certified to us, but we limited our review to the sole question of whether the evidence was legally sufficient to prove that Young had committed the crime of attempted armed robbery 485 A.2d 269.[4]

---

**3.** In imposing sentence the court said:
[Y]oung is 41 years old. He has been a crime wave up and down the East Coast from New York to Tennessee. Now he stopped in Maryland, and look what he did here.

\*　　\*　　\*　　\*　　\*　　\*

He is a violent criminal. Now I am sorry he doesn't have this consciousness of right or wrong. And I don't understand why he can't learn it, because he has had a chance to reflect in prison. But I have to take him off the street for the safety of people.

It appears from the transcript of the sentencing proceedings that at the time Young was sentenced upon the convictions here reviewed he was also sentenced upon convictions rendered at a separate trial of armed robbery and the use of a handgun in a crime of violence to 20 years and 15 years respectively to run concurrently, but consecutively to the sentences imposed in the case *sub judice.*

**4.** We denied a *pro se* petition by Young requesting that we also entertain other issues raised before the Court of Special Appeals.

There is no dispute as to the circumstances which led to the indictment of Young. Several banks in the Oxon Hill-Fort Washington section of Prince George's County had been held up. The Special Operations Division of the Prince George's Police Department set up a surveillance of banks in the area. In the early afternoon of 26 November 1982 the police team observed Young driving an automobile in such a manner as to give rise to a reasonable belief that he was casing several banks. They followed him in his reconnoitering. At one point when he left his car to enter a store, he was seen to clip a scanner onto his belt. The scanner later proved to contain an operable crystal number frequency that would receive Prince George's County uniform patrol transmissions. At that time Young was dressed in a brown waist-length jacket and wore sunglasses.

Around 2:00 p.m. Young came to rest at the rear of the Fort Washington branch of the First National Bank of Southern Maryland. Shortly before, he had driven past the front of the Bank and parked in the rear of it for a brief time. He got out of his car and walked hurriedly beside the Bank toward the front door. He was still wearing the brown waist-length jacket and sunglasses, but he had added a blue knit stocking cap pulled down to the top of the sunglasses, white gloves and a black eyepatch. His jacket collar was turned up. His right hand was in his jacket pocket and his left hand was in front of his face. As one of the police officers observing him put it, he was "sort of duck[ing] his head."

It was shortly after 2:00 p.m. and the Bank had just closed. Through the windows of his office the Bank Manager saw Young walking on the "landscape" by the side of the Bank toward the front door. Young had his right hand in his jacket pocket and tried to open the front door with his left hand. When he realized that the door was locked and the Bank was closed, he retraced his steps, running past the windows with his left hand covering his face. The Bank Manager had an employee call the police.

Young ran back to his car, yanked open the door, got in, and put the car in drive "all in one movement almost," and drove away. The police stopped the car and ordered Young to get out. Young was in the process of removing his jacket; it fell over the car seat and partially onto the ground. The butt of what proved to be a loaded .22 caliber revolver was sticking out of the right pocket of the jacket. On the front seat of the car were a pair of white surgical gloves, a black eyepatch, a blue knit stocking cap, and a pair of sunglasses. Young told the police that his name was Morris P. Cunningham. As Young was being taken from the scene, he asked "how much time you could get for attempted bank robbery."

A criminal attempt requires specific intent; the specific intent must be to commit some other crime.[5] The requisite intent need not be proved by direct evidence. It may be inferred as a matter of fact from the actor's conduct and the attendant circumstances. *See* R. Perkins & R. Boyce, *Criminal Law* at 637–640 (3d ed. 1982); *A Treatise on the Law of Crimes* (Clark & Marshall) § 4.08 (M. Barnes, 7th Ed.1967); 4 *Wharton's Criminal Law* § 743 (C. Torcia, 14 Ed.1981 & Supp.1985); W. LaFave & A. Scott, *Handbook on Criminal Law* § 59 at 428–431 (1972); A. Loewy, *Criminal Law in a Nutshell*, § 9.02 at 152 (1975). Young concedes that "evidence is present ... from which it is possible to infer that [he] may have intended to commit a crime inside the bank...." He suggests, however, that this evidence is not "compelling...." We think that it is most compelling. We believe that it is more than legally sufficient to establish beyond a reasonable doubt

---

5. "The crime of attempt does not exist in the abstract, but rather exists only in relation to other offenses; a defendant must be charged with an attempt to commit a specifically designated crime, and it is to that crime one must look in identifying the kind of intent required. For example, if the charge is attempted theft and theft is defined as requiring an intent to permanently deprive the owner of his property, then that same intent must be established to prove the attempt." W. LaFave & A. Scott, *Handbook on Criminal Law* § 59 at 429 (1972). A general intent to engage in criminality is not enough.

that Young had the specific intent to commit an armed robbery as charged.

We noted *supra* that in *Wiley v. State*, 237 Md. 560, 207 A.2d 478, this Court addressed the abandonment aspect of criminal attempts. We observed in *Wiley* that there was agreement among the text writers and the cases that

if one who has intended to attempt a crime freely and voluntarily abandons the idea before it has progressed beyond mere preparation, he has not committed the crime of attempt; but a voluntary abandonment of an attempt which has proceeded beyond mere preparation into a direct act or acts in furtherance of the commission of the attempt does not expiate the guilt of, or forbid punishment for, the crime already committed. 237 Md. at 564, 207 A.2d 478.

*Compare* Model Penal Code (Proposed Official Draft 1962) § 5.01(4) *and* State of Maryland Comm'n on Criminal Law, Proposed Criminal Code (1972) § 110.15. The *Wiley* rule precludes renunciation after the conduct of a person has reached the stage of an indictable offense, that is when he has performed the overt act toward the culmination of his commission of the crime intended so as to render the offense of attempt complete. Of course, if the person's conduct has not progressed beyond mere preparation, in other words, he has not performed the requisite overt act, he would not be culpable in any event. It follows that when the renunciation occurs before the offense of attempt is completed, the reasons for the renunciation are immaterial. Whether the abandonment at that stage was motivated by increased fear of failure, detection, or arrest or simply by a change of heart is of no matter. The short of it is that if the requisite overt act has not yet occurred, there is nothing to forgive; if the act has occurred, it is too late to renounce and abandon what has become a punishable offense. Such is the teaching of *Wiley*, and Young recognizes that "Maryland has specifically held that there can be no abandonment once the 'overt act' has been committed." Thus, the thrust

of Young's argument that the evidence was not sufficient to sustain his conviction of attempted armed robbery goes to that aspect of criminal attempts which requires the performance of some overt act which is more than mere preparation for the commission of the intended crime.[6]

The determination of the overt act which is beyond mere preparation in furtherance of the commission of the intended crime is a most significant aspect of criminal attempts. If an attempt is to be a culpable offense serving as the basis for the furtherance of the important societal interests of crime prevention and the correction of those persons who have sufficiently manifested their dangerousness, the police must be able to ascertain with reasonable assurance when it is proper for them to intervene. It is not enough to say merely that there must be "some overt act beyond mere preparation in furtherance of the crime" as the general definition puts it. It is true that this definition is in line with the observation of Justice Holmes that

> [i]ntent to commit a crime is not itself criminal. There is no law against a man's intending to commit a murder the day after tomorrow. The law deals only with conduct. An attempt is an overt act. O. Holmes, *The Common Law* 65 (1923).

But more is needed. It has been suggested that an answer to the question of what overt act is required, couched in terms of "mere preparation," will not suffice. It does not "resolve the problem; it simply restates it." Loewy, *supra.*

§ 9.03, at 154 (1975). The definition does, however, highlight the problem as to what "proximity to completion [a

---

6. Young does not present a question regarding the third aspect of criminal attempts—the effect on culpability of impossibility to commit the intended crime—and we do not now address that aspect. The Court of Special Appeals has applied the common law rule which distinguishes between "legal impossibility" and "factual impossibility" and deems the former but not the latter to be a defense to a charge of attempt. *See In Re Appeal No. 568, Term 1974,* 25 Md.App. 218, 220–223, 333 A.2d 649, *cert. denied,* 275 Md. 751 (1975) and *Waters v. State,* 2 Md.App. 216, 226–228, 234 A.2d 147 (1967), *cert. denied,* 259 Md. 737 (1970).

person] must achieve before he can be deemed to have attempted [to commit] a crime." *Id.* In solving this problem the interest of society and the rights of the individual must be kept in balance. Thus, the importance of the determination of the point at which the police may properly intervene is readily apparent. There is no dispute that there must be some overt act to trigger police action. As we have seen, bad thoughts do not constitute a crime, and so it is not enough that a person merely have intended and prepared to commit a crime. "There must also be an act, and not any act will suffice." LaFave & Scott, *supra,* § 59, at 431. What act will suffice to show that an attempt itself has reached the stage of a completed crime has persistently troubled the courts. They have applied a number of approaches in order to determine when preparation for the commission of a crime has ceased and the actual attempt to commit it has begun. It is at the point when preparation has been completed and perpetration of the intended crime has started that a criminal attempt has been committed and culpability for that misdemeanor attaches. A number of text writers have discussed and evaluated the different approaches employed by the courts to resolve the problem. We find the exposition of these approaches by LaFave and Scott to be the clearest, and what follows is taken largely from their comments on "The Act" at pages 431–438 of their *Handbook on Criminal Law, supra.*

In the "Proximity Approach" the act must be sufficiently proximate to the intended crime. But how proximate? The strictest approach is that the accused must have engaged in the "last proximate act," that is, have done everything he believes necessary to bring about the intended result. Some courts follow a less rigid formula. They deem that the act is proximate when it is indispensable to the criminal scheme. Other courts believe that an act is "proximate" when it is physically proximate to the intended crime so that there is a dangerous proximity to success. The emphasis is not so much upon what the accused has done as upon what remains to be done. Thus the time and place at which the

intended crime is supposed to occur take on considerable importance. This appears to be the approach that the Court of Special Appeals followed in *Frye v. State, supra,* in determining that the evidence was insufficient to support the conviction of attempted kidnapping.

"The Probable Desistance Approach" contemplates an act which in the ordinary course of events would result in the commission of the intended crime except for the intervention of some extraneous factor. Under this approach the accused's conduct must pass that point where most men, holding such an intention as the accused holds, would think better of their conduct and desist.

In "The Equivocality Approach" the act which transforms the accused's conduct from preparation to perpetration constitutes a step towards the commission of the intended crime, and the doing of the act can have no other purpose than the commission of that crime. This approach is also known as the *res ipsa loquitur* test.

"The Model Penal Code Approach" looks to § 5.01 of the Model Penal Code (Proposed Official Draft 1962) to solve the problem. Under subsection (1)(c) a person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he

> purposely does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a *substantial step* in a course of conduct planned to culminate in his commission of the crime. (emphasis added).

Each of these approaches is not without advantages and disadvantages in theory and in application, as is readily apparent from a perusal of the comments of various text writers and of the courts. *See, e.g.,* LaFave & Scott, *supra,* §§ 59–60; Clark and Marshall, *supra,* §§ 4.05–4.14; Wharton, *supra,* §§ 741–753; Loewy, *supra,* §§ 9.01–9.08; Holmes, *supra,* at 65–75; R. Perkins & R. Boyce, *Criminal Law* § 3 at 611–655 (3rd ed. 1982); R. Gilbert & C. Moylan,

*Maryland Criminal Law: Practice and Procedure*
§§ 4.0–4.6 (1983); Hochheimer, *supra,* § 266.

We believe that the preferable approach is one bottomed on the "substantial step" test as is that of Model Penal Code. We think that using a "substantial step" as the criterion in determining whether an overt act is more than mere preparation to commit a crime is clearer, sounder, more practical and easier to apply to the multitude of differing fact situations which may occur. Therefore, in formulating a test to fix the point in the development of events at which a person goes further than mere unindictable preparation and becomes guilty of attempt, we eliminate from consideration the "Proximity Approach," the "Probable Desistance Approach" and the "Equivocality Approach."

We are by no means alone in the belief that an approach based on the substantial step test is superior. This belief was shared by the Commission which drafted a proposed criminal code for this State following the Model Penal Code approach with respect to criminal attempts. State of Maryland Comm'n on Criminal Law, Proposed Criminal Code (1972) § 110.00, comments at 149–153, and Summary of Provisions at xix. Courts in eight of the federal circuits and courts or legislatures in 23 states also share this belief. *See* Appendix B.

■ Convinced that an approach based on the "substantial step" test is the proper one to determine whether a person has attempted to commit a crime, and that § 110.00 of the Md. Proposed Criminal Code best expressed it, we adopt the provisions of that section:

A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which constitutes a substantial step toward the commission of that crime whether or not his intention be accomplished.

Conduct shall not be held to constitute a substantial step under this section unless it is strongly corroborative of the actor's criminal intention. Without negativing the

sufficiency of other conduct, the following, if strongly corroborative of the actor's criminal purpose, shall not be held insufficient as a matter of law to constitute a substantial step:

(a) lying in wait, searching for or following the contemplated victim of the crime;

(b) enticing or seeking to entice the contemplated victim of the crime to go to the place contemplated for its commission;

(c) reconnoitering the place contemplated for the commission of the crime, at a time or in a manner not usual for law-abiding individuals, under circumstances that warrant alarm for the safety of persons or property in the vicinity, such as taking flight upon appearance of a police officer, refusing to identify himself, or manifestly endeavoring to conceal himself or any object;

(d) unlawful entry of a structure, vehicle or enclosure in which it is contemplated that the crime will be committed;

(e) possession of materials to be employed in the commission of the crime, which are specially designed for such unlawful use or which can serve no lawful purpose of the actor under the circumstances;

(f) possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, where such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances; or

(g) soliciting an innocent agent to engage in conduct constituting an element of the crime.

This language follows § 5.01(1)(c) of the Model Penal Code, but it deletes the subjective considerations on the part of the actor stated therein. It also narrows the definition of "reconnoitering" found in § 5.01(2)(c) of the Model Penal Code. In accord with *Lightfoot v. State, supra,* the definition eliminates failure to consummate the intended crime as one of the essential elements of a criminal attempt. Thus,

the State is not required to prove beyond a reasonable doubt that the crime was not in fact committed. Furthermore, the elimination of failure as a necessary element makes attempt available as a compromise verdict or a compromise charge. *See* Comment to § 110.00 at 153 of the Md. Proposed Criminal Code.

█ When the facts and circumstances of the case *sub judice* are considered in the light of the overt act standard which we have adopted, it is perfectly clear that the evidence was sufficient to prove that Young attempted the crime of armed robbery as charged. As we have seen, the police did not arrive on the scene after the fact. They had the advantage of having Young under observation for some time before his apprehension. They watched his preparations. They were with him when he reconnoitered or cased the banks. His observations of the banks were in a manner not usual for law-abiding individuals and were under circumstances that warranted alarm for the safety of persons or property. Young manifestly endeavored to conceal his presence by parking behind the Bank which he had apparently selected to rob. He disguised himself with an eyepatch and made an identification of him difficult by turning up his jacket collar and by donning sunglasses and a knit cap which he pulled down over his forehead. He put on rubber surgical gloves. Clipped on his belt was a scanner with a police band frequency. Except for the scanner, which he had placed on his belt while casing the Bank, all this was done immediately before he left his car and approached the door of the Bank. As he walked towards the Bank he partially hid his face behind his left hand and ducked his head. He kept his right hand in the pocket of his jacket in which, as subsequent events established, he was carrying, concealed, a loaded handgun, for which he had no lawful use or right to transport. He walked to the front door of the Bank and tried to enter the premises. When he discovered that the door was locked, he ran back to his car, again partially concealing his face with his left hand. He got in his car and immediately drove away. He

removed the knit hat, sunglasses, eyepatch and gloves, and placed the scanner over the sun visor of the car. When apprehended, he was trying to take off his jacket. His question as to how much time he could get for attempted bank robbery was not without significance.

It is clear that the evidence which showed Young's conduct leading to his apprehension established that he performed the necessary overt act towards the commission of armed robbery, which was more than mere preparation. Even if we assume that all of Young's conduct before he approached the door of the Bank was mere preparation, on the evidence, the jury could properly find as a fact that when Young tried to open the bank door to enter the premises, that act constituted a "substantial step" toward the commission of the intended crime. It was strongly corroborative of his criminal intention.

One of the reasons why the substantial step approach has received such widespread favor is because it usually enables the police to intervene at an earlier stage than do the other approaches. In this case, however, the requisite overt act came near the end of the line. Indeed, it would qualify as the necessary act under any of the approaches—the proximity approach, the probable desistance approach or the equivocality approach. It clearly met the requirements of the substantial step approach. Since Young, as a matter of fact, could be found by the jury to have performed an overt act which was more than mere preparation, and was a substantial step towards the commission of the intended crime of armed robbery, it follows as a matter of law that he committed the offense of criminal attempt.

We think that the evidence adduced showed directly, or circumstantially, or supported a rational inference of, the facts to be proved from which the jury could fairly be convinced, beyond a reasonable doubt, of Young's guilt of attempted armed robbery as charged. Therefore, the evidence was sufficient in law to sustain the conviction. We so hold.

JUDGMENTS OF THE COURT OF SPECIAL APPEALS
AFFIRMED; COSTS TO BE PAID BY APPELLANT.

## APPENDIX A

*Legislative Designation of Criminal Attempts*

Md.Code (1957, 1982 Repl.Vol., 1984 Cum.Supp.) Art. 27:

§ 9A (misdemeanor to attempt to burn contents of trash container);

§ 10 (felony to attempt to burn building);

§§ 23 and 24 (misdemeanor to attempt to bribe);

§ 34 (felony to attempt burglary with explosives);

§ 45A (misdemeanor to attempt to falsify, alter or access any public record);

§ 119 (felony to attempt to dynamite property);

§ 230A (misdemeanor to attempt to obtain public assistance by fraud);

§ 265 (misdemeanor to attempt to remove dead body);

§ 290 (misdemeanor to attempt to violate controlled dangerous substances law);

§ 450 (felony to attempt to poison a person);

§ 538 (felony to attempt sabotage);

§§ 562B and 562C (felony to attempt to extort $300 or more, misdemeanor if under $300).

Md.Code (1977, 1984 Repl.Vol.) Transportation Article:

§ 26–101 (a) ("[a]ny person who ... attempts to commit ... a violation of the Motor Vehicle Law ... is guilty of the violation.").

## APPENDIX B

The federal circuits which have adopted the "substantial step" test are:

1st Circuit: *United States v. Rivera-Sola,* 713 F.2d 866, 869 (1st Cir.1983).

2nd Circuit: *United States v. Manley,* 632 F.2d 978, 987 (2nd Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).

5th Circuit: *United States v. Mandujano,* 499 F.2d 370, 376 (5th Cir.1974), *cert. denied,* 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975).

6th Circuit: *United States v. Williams,* 704 F.2d 315, 321 (6th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983).

8th Circuit: *United States v. Joyce,* 693 F.2d 838, 841 (8th Cir.1982).

9th Circuit: *United States v. Snell,* 627 F.2d 186, 187 (9th Cir.1980), *cert. denied,* 450 U.S. 957, 101 S.Ct. 1416, 67 L.Ed.2d 382 (1981).

10th Circuit: *United States v. Monholland,* 607 F.2d 1311, 1318–20 (10th Cir.1979).

11th Circuit: *United States v. McDowell,* 705 F.2d 426, 427–28, *on rehearing,* 714 F.2d 106 (11th Cir.1983).

The States which have adopted the "substantial step" test in some form by legislative or judicial action are:

Alaska: Alaska Stat. § 11.31.100(a) (1983);

Arkansas: Ark.Stat.Ann. § 41–701(1)(b) (1974, 1977 Repl. Vol.);

Colorado: Colo.Rev.Stat. § 18–2–101(1) (1973, 1978 Repl. Vol.);

Connecticut: Conn.Gen.Stat. § 53a–49(a)(2) (1958, 1985 Repl.Vol.);

Delaware: Del.Code Ann. tit. 11, § 531(2) (1974, 1979 Repl. Vol.);

Georgia: Ga.Code § 16–4–1 (1984);

Hawaii: Hawaii Rev.Stat. § 705–500(1)(b) (1968, 1976 Repl. Vol.);

Illinois: Ill.Ann.Stat. ch. 38, § 8–4(a) (Smith-Hurd 1961, 1972 Repl.Vol., 1984–85 Cum.Supp.);

Indiana: Ind.Code Ann. § 35–41–5–1(a) (Burns 1977, 1979 Repl.Vol.);

Kentucky: Ky.Rev.Stat. § 506.010(1)(b) (1942, 1985 Repl. Vol.);

Maine: Me.Rev.Stat.Ann. tit. 17–A, § 152(1) (1964, 1983 Repl.Vol.);

Minnesota: Minn.Stat.Ann. § 609.17(1) (West 1983);

Missouri: Mo.Ann.Stat. § 564.011(1) (Vernon 1979);

Nebraska: Neb.Rev.Stat. § 28–201(1)(b) (1943, 1979 Repl. Vol.);

New Hampshire: N.H.Rev.Stat.Ann. § 629:1 (1955, 1974 Repl.Vol.);

New Jersey: N.J.Stat.Ann. § 2c:5–1(a)(3) (1972, 1982 Repl. Vol.);

North Dakota: N.D.Cent.Code § 12.1–06–01(1) (1960, 1976 Repl.Vol., 1985 Cum.Supp.);

Oregon: Ore.Rev.Stat. § 161.405(1) (1953, 1983 Repl.Vol.);

Pennsylvania: 18 Pa.Cons.Stat.Ann. § 901(a) (Purdon 1983);

Utah: Utah Code Ann. § 76–4–101(1) (1953, 1978 Repl.Vol.);

Washington: Wash.Rev.Code § 9A.28.020(1) (1983);

Wyoming: Wyo.Stat. § 6–1–301(a)(i) (1977);

Rhode Island has adopted the Model Penal Code by judicial fiat. *State v. Latraverse,* 443 A.2d 890 (R.I.1982).